145 So.2d 400 (1962)
Luke VIDRINE, Plaintiff and Appellee,
v.
Robert L. SIMONEAUX et al., Defendants and Appellants.
No. 616.
Court of Appeal of Louisiana, Third Circuit.
September 24, 1962.
Rehearing Denied October 18, 1962.
Certiorari Denied December 10, 1962.
*401 Voorhies, Labbe, Voorhies, Fontenot & Leonard, by H. Lee Leonard, Lafayette, for third-party plaintiff-appellant.
Joseph A. LaHaye, Opelousas, for defendant-appellant.
Leon S. Haas, Jr., Opelousas, for third-party defendant-appellee.
Preston N. Aucoin, Ville Platte, for plaintiffs-appellees.
Before TATE, CULPEPPER and HOOD, JJ.
HOOD, Judge.
This is a tort action arising out of a motor vehicle collision in which four automobiles were involved. The suit was instituted by Luke Vidrine, the owner and driver of one of the cars involved. The defendants named in the suit are Robert Simoneaux, Marion J. Stelly and Aetna Casualty and Surety Company, the last named defendant being the public liability and property damage insurer of an automobile being driven by Charles A. Rice, which automobile was one of those involved in the collision.
Another tort action arising out of this accident was instituted by Leon Vidrine and his wife, Beulah Vidrine, against the same three defendants, the plaintiffs in that suit alleging that they were guest passengers in the Luke Vidrine car and that they sustained personal injuries as a result of this accident. Both of these suits were consolidated for the purposes of trial and appeal, and judgment is being rendered by us in the companion case on this date. See Vidrine et ux. v. R. Simoneaux et al., La.App., 145 So.2d 411.
Answers were filed by the defendants in both of these suits, and in addition thereto defendant Aetna Casualty and Surety Company filed a third party action in each suit against defendants Simoneaux and Stelly, praying alternatively that if Aetna be found to be liable that either or both of the *402 other defendants, because of their concurrent negligence, be compelled to contribute proportionately to the amount awarded to plaintiffs.
After trial of these consolidated cases, judgment was rendered by the trial court in favor of plaintiff in this suit, and in favor of plaintiffs in the companion suit, against Simoneaux and Aetna Casualty and Surety Company. Judgment further was rendered rejecting the demands of plaintiffs in both suits against defendant Stelly, and dismissing the third party actions filed by Aetna Casualty and Surety Company against that defendant. Defendants Simoneaux and Aetna Casualty and Surety Company have appealed from the judgments rendered in both cases. Plaintiffs in the companion suit, Leon Vidrine and Beulah Vidrine, have answered the appeal in that case asking that the awards made to them be increased.
The suit arose out of an accident which occurred at approximately 5:00 P.M., on April 12, 1961, on U. S. Highway 167 in St. Landry Parish. The evidence establishes that immediately before the collision occurred Charles A. Rice was driving his employer's automobile in an easterly direction on U. S. Highway 167, approaching Sebastian's Bar, which was located on the south side of the road. Defendant Simoneaux also was driving his automobile in an easterly direction along the same highway about 150 or 175 feet behind Rice. As these two cars approached Sebastian's Bar at a speed of approximately 60 miles per hour, an automobile owned and operated by defendant Stelly entered the highway from the parking lot surrounding this bar, and proceeded to travel in an easterly direction on the highway, in front of the Rice car, at a speed of about 15 miles per hour. The Stelly vehicle entered the highway about 150 to 250 feet in front of the approaching Rice car.
At about the same time, the vehicle owned and operated by plaintiff, Luke Vidrine, was approaching from the east, with Mr. and Mrs. Leon Vidrine riding in the car as passengers. When Rice saw the Stelly vehicle enter the highway in front of him, he immediately applied his brakes, sounded his horn and thereafter brought his car practically to a stop on the highway a few feet behind the Stelly car. There is some question as to whether Rice applied his brakes continuously from the time he first saw the Stelly car enter the highway until he stopped, but the evidence indicates to us that he applied them lightly at first, and then with greater force until his car was brought practically to a stop about five feet behind Stelly. While Rice was in the process of trying to stop his vehicle, and when he reached a point just a few feet behind the Stelly car, the latter vehicle left the highway and was driven onto the right or south shoulder. Immediately after the Stelly car left the highway, Rice heard a car approaching from his rear, and he thereupon attempted to accellerate his automobile in order to avoid a collision, but in spite of this attempt the right rear of his car was struck by the left front portion of the Simoneaux automobile. The force of this collision caused the rear of the Simoneaux vehicle to swing to its left, into the westbound lane, where it was struck by the Vidrine car.
The Vidrine vehicle, just prior to the accident, was in its proper lane of traffic. It was being driven at a speed of about 45 miles per hour, and the driver had pulled about two feet onto the north shoulder of the road in an effort to avoid a collision. We think the trial court was correct in holding that Luke Vidrine, the driver of that car, as well as the passengers, Mr. and Mrs. Leon Vidrine, were free from contributory negligence.
Stelly immediately left the scene of the accident, but Rice pursued him down the highway and attempted to persuade him to return. Although Stelly did not return, his license number was obtained and upon being questioned the next day, he admitted *403 that he was present when the accident occurred.
The collision occurred about 290 feet east of the northeast corner of Sebastian's Bar. The Rice vehicle was 150 to 250 feet west of the entrance to the bar when the Stelly vehicle entered the highway. Since Rice applied his brakes immediately after seeing Stelly enter the highway, it is apparent that the Rice car traveled a distance of at least 450 feet between the time he first applied his brakes until he was struck in the rear by the Simoneaux car.
As a result of this accident, plaintiff in this suit, Luke Vidrine, suffered property damages, and Mr. and Mrs. Leon Vidrine, plaintiffs in the companion suit, both suffered personal injuries.
Plaintiff alleges that Rice was negligent in the following particulars: (a) in stopping too sharply and abruptly on a highway where traffic was heavy, (b) in not giving appropriate and adequate signals for stopping, (c) in failing to keep a proper lookout for traffic entering the highway from a crowded night club parking lot, (d) in traveling at a unsafe speed for the conditions of traffic and the highway at the time of the accident, and (e) in failing to see what he should have seen and to do what he should have done to avoid the accident. The trial court found that Rice was negligent in stopping too abruptly on the highway, and in driving at an excessive rate of speed. Defendant Aetna contends that the court erred in arriving at these conclusions.
The evidence establishes that as Rice approached Sebastian's Bar he was driving at a speed not in excess of 60 miles per hour. The highway at that point was hard surfaced, and the accident occurred in open country, not in any city or town. Plaintiff contends that the speed was excessive, however, because this particular portion of the road was under construction at the time. The evidence shows that an asphalt spreading project was under way along an 11-mile stretch of road which included the site where the accident occurred, the construction work extending from a point seven miles west of that site to a point four miles east of it. Large signs were located at both ends of the project, indicating that the driver was entering a zone of road construction and stating a speed limit of 45 miles per hour. The speed limit on highways generally in that area was 60 miles per hour. There also were "soft shoulder" signs placed at intervals of approximately one-half mile throughout the zone of construction, and there were pieces of heavy equipment on the road where the actual work was being performed. Although these conditions were present on the day of the accident, it appears from the evidence that no work was actually being done and no equipment or crews were located within one mile of the place where the accident occurred. Although other layers of asphalt were to be spread before the job was completed, it appears to us from this evidence that at the time this accident occurred the highway in the immediate vicinity of the place where the accident occurred was smooth and unobstructed and there was no greater danger in driving at a speed of 60 miles per hour there than there would have been had no construction work been in progress. We are convinced that Rice was not negligent in driving at an excessive rate of speed under the facts and circumstances presented here. Even though he should be held to be negligent in driving at an excessive rate of speed, however, we think the speed at which he was traveling was not a contributing or proximate cause of the accident.
Counsel for plaintiff contends, and we assume the trial court concluded, that Rice continued to travel at a high rate of speed after Stelly had entered the highway until he reached a point a very short distance behind Stelly, and that he then applied his brakes suddenly, coming to an abrupt stop, and thus he created an emergency which contributed to the accident. We do not think the facts support such a contention. Rice testified that he applied his brakes immediately when the Stelly car entered the *404 highway and that he continued to apply them until his car was brought almost to a stop. Simoneaux, the driver of the following vehicle, confirms the fact that Rice did apply his brakes immediately when Stelly entered the highway, although he recalls that the stop lights on the Rice car then went off but momentarily came on again and remained on until the Rice car almost came to a stop. We think the testimony of these two witnesses shows without question that Rice began applying his brakes about 450 feet before he reached the point where the collision occurred.
The physical facts also indicate that Rice did not make a more sudden or abrupt stop than was necessary under the circumstances. His car did not skid on the highway at any time, as did the Simoneaux car, and he remained in complete control of it during the entire maneuver. Also, since Rice was traveling at a speed approximately four times as fast as that of Stelly, it is apparent that had he continued to drive at that speed after Stelly entered the highway he would have overtaken and passed the Stelly car after the latter had driven a distance of only 50 or 75 feet from Sebastian's Bar. The accident actually occurred 290 feet beyond that bar, so it is obvious that Rice either must have reduced the speed of his car gradually or he did so suddenly immediately after Stelly entered the highway and then followed Stelly at a very slow rate of speed (Stelly was traveling at a speed of 15 miles per hour) a substantial distance before the Simoneaux car collided with him. We are convinced that Rice brought his vehicle virtually to a stop as evenly as it was reasonably possible for him to do so under the emergency with which he was confronted.
Plaintiffs contend that it was not necessary for Rice to bring his vehicle to a stop at all, and that he was negligent in doing so, because Stelly had pulled off the highway and Rice could have continued in an easterly direction without stopping. We find no merit to this argument, because the evidence shows that Stelly did not pull off the highway until immediately before Rice reached a point within a few feet behind him, and that Rice thereupon immediately attempted to accellerate his car.
Plaintiff further contends that Rice was negligent in failing to give a hand signal indicating that he intended to stop. We think the electrical stop signals on the Rice car, which were operating and which were actually observed by the following driver, served as sufficient warning of Rice's intent to bring his vehicle to a stop, and that he was not negligent in failing to give a hand signal. See LSA-R.S. 32:236.
After considering all of the evidence and circumstances presented in this case, we are compelled to conclude that the trial court erred in holding that Rice was negligent, and accordingly that portion of the judgment which condemns the insurer of the Rice automobile to pay damages must be reversed.
The trial court found that defendant Simoneaux was negligent in following too closely to the Rice vehicle, and that his negligence in that respect was the proximate cause of the accident. LSA-R.S. 32:234 (A) provides that:
"The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicle and the traffic upon and condition of the highway."
Simoneaux testified that he was 150 to 175 feet behind Rice when the Stelly car first entered the highway. He saw Stelly enter the highway in front of Rice, he observed that the stop lights on the Rice car came on immediately, indicating that the brakes of that car had been applied, and he then applied his own brakes. According to his testimony, the distance between his car and the Rice vehicle was reduced to some extent by the time he applied his brakes, but that they were still a substantial distance apart while Simoneaux was applying his brakes. *405 The facts show that the collision occurred at a point approximately 600 feet east of or beyond the point where Simoneaux first observed the danger. It seems apparent to us that Simoneaux either was negligent in following the Rice vehicle too closely, as found by the trial judge, or he was negligent in failing to bring his vehicle to a stop after the danger was observed and before the collision occurred. Under either of these circumstances his negligence was a proximate and contributing cause of the accident.
The trial court concluded that "Stelly was not guilty of any negligence in any respect." Both appellants contend that the trial judge erred in arriving at that conclusion. A procedural question is presented, however, which we think should be disposed of before determining the factual and substantive issues involved here. The trial court dismissed the plaintiff's suit and Aetna's third party action against defendant Stelly, and since plaintiff has not appealed from the judgment there is some question as to whether on this appeal we can inquire into the liability vel non of defendant Stelly. This question is raised because of a line of jurisprudence in this state which holds that where two persons are sued as solidary obligors, and the plaintiff takes no appeal from a judgment dismissing the suit as to one defendant while condemning the other, an appeal by the latter has no effect on the former defendant and, hence, does not bring him before the appellate court. Aetna Life Insurance Company v. De Jean, 185 La. 1074, 171 So. 450; Spanja v. Thibodaux Boiler Works, La.App.Orl., 37 So.2d 615; De Cuers v. Crane Company, La.App.Orl., 40 So.2d 61; Kahn v. Urania Lumber Company, La.App. 2 Cir., 103 So.2d 476; Haindel v. Sewerage and Water Board, La.App. Orl., 115 So.2d 871; Waggonner v. Allstate Insurance Company, La.App. 2 Cir., 128 So.2d 214. See also Stevens v. Liberty Mutual Insurance Company, 242 La. 1006, 141 So.2d 346 (affirming La.App. 2 Cir., 133 So.2d 1).
In determining whether Stelly, the discharged defendant in this case, may be continued in litigation by the appeal of his co-defendant, we think it is necessary to consider the laws of this state relating to third party actions and those dealing with the right of contribution among joint tort-feasors. Prior to January 1, 1961, the governing rule relating to contribution among joint tort-feasors was that announced in Kahn v. Urania Lumber Company, supra, and other cases above cited, which rule is to the effect that a defendant had no independent right to enforce contribution among other tort-feasors unless the plaintiff had initially sued them. However, the controlling codal provision relating to this subject, Article 2103 of the Civil Code, was amended by Act 30 of 1960, and the pertinent portion of that article now reads as follows:
"A defendant who is sued on an obligation which, if it exists, is solidary may seek to enforce contribution, if he is cast, against his solidary co-debtor by making him a third party defendant in the suit, * * * whether or not the third party defendant was sued by the plaintiff initially * * *."
This amendment which became effective on January 1, 1961, was intended to implement Articles 1111-1116 of the LSA-Code of Civil Procedure, relating to third party actions, and it legislatively overruled Kahn v. Urania Lumber Company, supra. See explanatory note under LSA-C.C. Art. 2103. (1961 P.P.); Brown v. New Amsterdam Casualty Company, La.App. 3 Cir., 136 So. 2d 283; Sam v. Deville Gin, Inc. et al., La.App. 3 Cir., 143 So.2d 838; and Comment, Contribution Among Tort-Feasors, 22 L.L.R. 818.
We think this amendment to R.C.C. Article 2103, relating to the right of contribution among tort-feasors, as well as the introduction of a broad third party practice procedure (Act 433 of 1954, later included as LSA-C.C.P. Arts 1111-1116), has effected *406 a change in the rules which were enunciated in the above cited cases. In Ensminger v. Great Atlantic & Pacific Tea Company, La.App. 2 Cir., 134 So.2d 686, it was said that:
"The purpose of the third party action is to allow a defendant in civil actions to implead one who will be secondarily liable to him if plaintiff's suit against him is successful. It is intended to avoid a multiplicity of actions."
See also Bourree v. A. K. Roy, Inc., 232 La. 149, 94 So.2d 13.
In the instant suit, if the trial court had rendered judgment against Stelly and held him solidarily liable with defendant Simoneaux, either of these co-defendants would have had the right to enforce contribution against the other. Accordingly, Simoneaux then would have had the right to enforce contribution against Stelly. The district court, however, determined that Stelly was not liable, and Simoneaux has appealed, seeking inter alia to have the judgment reversed insofar as it dismisses the suit against his co-defendant Stelly. If we should determine that the judgment dismissing the suit against Stelly is final insofar as that defendant is concerned, then we in effect would be depriving Simoneaux of his right to contribution from Stelly without giving him an opportunity to have the issue considered on appeal. Under such a holding, Simoneaux's right to have the matter reviewed on appeal would depend solely upon the whim or wishes of either the plaintiff or Stelly, that is, it would depend upon whether either of them appealed. It was not necessary in this case for Simoneaux to file a third party action against Stelly, because the latter had already been named as a party-defendant. Also, we do not think it would be proper for us to reserve unto Simoneaux the right to demand contribution from Stelly in a separate proceeding, because all interested parties were represented in this case on the trial on its merits and no useful purpose would be served by requiring a separate procedure to determine an issue which is being resolved here.
In view of the recent amendment to Article 2103 of the Civil Code, therefore, we hold that where two persons are sued as solidary obligors, and the plaintiff takes no appeal from a judgment which dismisses the suit as to one defendant and condemns the other, an appeal by the latter brings the discharged defendant before the appellate court, and the litigation may be continued against him as though an appeal from the judgment of dismissal had been taken by plaintiff.
In the instant suit we conclude that the appeal taken by Simoneaux brings his codefendant Stelly before the appellate court, and, accordingly, it is proper for us to consider and determine on this appeal the liability vel non of Stelly.
The trial court found that Stelly "was proceeding at a moderate rate of speed in his proper lane of traffic," and for that reason he was not negligent. We agree that he traveled at a moderate rate of speed (15 miles per hour) after he entered the highway, but we feel that he was negligent in entering the highway from a private parking area directly in front of the approaching Rice and Simoneaux vehicles, when it should have been obvious to him that he could not do so in safety.
In this case Stelly admits that at the time he entered the highway from the private parking lot he saw the Vidrine car approaching from his right and the Rice car approaching from his left. He states that as he was leaving the parking lot he stopped at the edge of the highway, and after seeing these vehicles approaching from both directions he nevertheless started again and entered the lane of the highway in which Rice was traveling. He estimated that the Rice car was about "150 or 200 feet," or "over a half of a block," from him when he entered the highway. In our opinion it should have been obvious to Stelly that under the conditions *407 which existed there he could not safely have entered the highway directly in front of the Rice vehicle, and that under any circumstance it would have required an emergency stop by Rice in order to avoid a collision. Rice, of course, succeeded in making the emergency stop without colliding with Stelly, but the fact that he was compelled to stop so suddenly was one of the precipitating causes of the accident which did occur.
LSA-R.S. 32:237(E) provides that:
"The driver of a vehicle entering a public highway from a private road * * * shall yield the right of way to all vehicles approaching on the public highway * * *."
In the absence of unusual circumstances, this statute places a much greater duty of care upon the driver of a vehicle who is entering the public highway from a private road than it does upon the driver who is proceeding upon that highway. Goff v. Sinclair Refining Company, La.App. 2 Cir., 162 So. 452. While a driver may not simply rely on the right of way accorded him by law and recklessly drive along the highway with complete abandon of all caution, yet such a motorist has a right to assume that this right of way law will be obeyed, and he is not under a duty to search in anticipation of careless drivers who may violate his right of way. Gutierrez v. Columbia Casualty Company, La. App.Orl., 100 So.2d 537.
In Lofton v. Cottingham, La.App. 2 Cir., 172 So. 377, in holding that a driver who entered a public highway from a private road at a point about 150 to 200 feet in front of oncoming traffic was negligent, the court said:
"The creation of an imminently perilous situation was inevitable on the projection of his car onto the pavement. This should have been appreciated by him, and duty required that he await the passage of the speeding machine."
A case which involved facts somewhat similar to those involved here is that of Gay v. United States Fidelity & Guaranty Co., La.App. 2 Cir., 76 So.2d 60, in which case the defendant's insured, a mail carrier, had been placing mail in boxes along the highway at the time the plaintiff's car was approaching him from the rear. When the plaintiff's car was 250 or 300 feet from the mail carrier's vehicle, and traveling at a speed of 55 to 60 miles per hour, the mail carrier started to project his car onto the main highway, despite the warning which the plaintiff had given by blowing his horn. The mail carrier then stopped his car completely, but started it up again, and pulled out onto the highway directly in the path of the plaintiff's oncoming vehicle. At that time, a truck was approaching in the opposite lane of traffic, and the plaintiff's car skidded down the road and collided with the truck. The mail carrier's car was not touched by the wreckage, and he drove away from the site of the accident, as did Stelly in the case at bar. The negligence of the mail carrier was found to be the proximate cause of the accident.
In Holland v. United States Fidelity & Guaranty Company, La.App. 2 Cir., 131 So. 2d 574, the Court, quoting from an earlier decision, Payton v. Great American Indemnity Co., La.App. 2 Cir., 83 So.2d 575, said:
"`It is recognized that the primary duty of avoiding a collision rests upon the driver of a vehicle entering a public highway from a private drive. He is required to keep a lookout for vehicles upon the favored street and must keep his car under control and exercise due care and caution.'"
The case of Roeling v. Fidelity-Phenix Fire Insurance Company of New York, La.App. 4 Cir., 125 So.2d 661, involved an intersectional collision, but we think the rule applied there is also applicable here because, certainly, a motorist entering a highway from a private parking lot, as did Stelly in this case, is required to exercise at least as much care as that required *408 of a motorist entering a favored highway at an intersection. In that case the Court said:
"It is well established that, before a motorist can properly preempt an intersection, he must show his entry into the intersection at proper speed, sufficiently in advance of a motorist approaching the intersection, to permit him to clear the intersection without an emergency stop by the approaching motorist. * * *"
Under what we consider to be the well established law and jurisprudence of this state, we conclude that Stelly was negligent in pulling onto the public highway from a private parking lot directly in the path of the oncoming Rice and Simoneaux vehicles when he saw or should have seen that such a maneuver could not reasonably be made in safety. His negligence in that respect was a proximate cause of the accident rendering him liable in solido with Simoneaux for the damages sustained by plaintiff in this suit, as well as for the damages sustained by plaintiffs in the companion case.
In the instant suit judgment was rendered in favor of plaintiff for the principal sum of $676.00, and no issue has been raised on this appeal as to the amount of that award.
For the reasons herein assigned, the judgment of the trial court is amended and recast to read as follows:
IT IS ORDERED, ADJUDGED and DECREED that there be judgment herein in favor of plaintiff, Luke Vidrine, and against defendants, Robert L. Simoneaux and Marion J. Stelly, jointly and in solido, for the sum of $676.00, together with interest thereon at the rate of five percent (5%) per annum from date of judicial demand until paid, and for all costs of these proceedings.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that the demands of plaintiff, Luke Vidrine, against defendant Aetna Casualty and Surety Company, be rejected, and that the third party petition filed by Aetna Casualty and Surety Company be dismissed.
Except as herein amended and recast, the judgment appealed from is affirmed. All costs of this appeal are assessed to defendant-appellant, Robert L. Simoneaux, and to defendant-appellee, Marion J. Stelly.
Amended and affirmed.
TATE, J., concurs in part and dissents in part.
TATE, Judge (dissenting).
With great respect for my brethren of the majority, I must nevertheless dissent.
The majority commits grave error, in my opinion, in accepting the impossible version of the accident given by Rice, whose credibility the trial court specifically evaluated unfavorably. In so doing, the majority has rejected the testimony of the four other eyewitnesses of the accident. Moreover, as will be shown, the physical facts of the accident corroborate the version of these eyewitnesses and discredit Rice's version, as the trial court correctly held.
The three plaintiffs in this and the companion suit uniformly testified that the accident was caused when Rice, proceeding at a fast rate of speed, was overtaking the slowly moving Stelly automobile in order to pass it. When Rice drew to the left to pass and saw that there was not sufficient distance between him and the oncoming Vidrine car, he then suddenly slammed on his brakes in order to avoid striking the Stelly car, causing the accident. The heedless approach too close to the Stelly car, and the improper attempt to pass it when the oncoming Vidrine vehicle was so close to its immediate front, was undoubtedly a proximate cause of the accident, and the trial court correctly so held.
The majority thinks that Stelly's sudden entrance on the highway in the immediate *409 path of the Rice vehicle caused a sudden emergency and was a proximate cause of this collision. With due apologies, I must state that I think this holding is fantastic under the facts.
The testimony of the investigating police officer positively proves that the point of impact was in excess of 290 feet past the point where Stelly first entered on the highway! This is corroborated by all the witnesses, and the majority accepts this factual finding. This physical fact almost positively disproves by itself that the accident did not result from any sudden entry on the highway by Stelly in Rice's immediate path.
The evidence also shows that Stelly proceeded down the highway at a very slow (15 mph) rate of speed, intending to turn right shortly at a gravel road, and the majority also accepts this evidence. At 15 mph (i. e., 21.9 per second), Stelly must have been on the highway over 13 seconds before the collision. Additionally, if the accident indeed occurred as Rice related (and the majority held), Rice would have either struck Stelly or come to a stop about two hundred feet before the place of the impact.
Rice states that he was going at a speed of 60 mph and that the Stelly car entered in his path when he was 150-250 feet west of it. He states he immediately and continuously applied his brakes, but nevertheless he did not come to a stop until a point just east of the point of impact, which was thus some 440 to 540 feet after the time when he first applied his brakes! He was driving a new 1961 Chevrolet automobile with power brakes. As the trial court noted, it is impossible to accept his testimony, as, if he had actually applied his brakes when he said he did (as soon as the Stelly car came on the highway), then he would have stopped long before the point of impact. Footnote 1 [See Appendix attached.]
In accepting Rice's version of the accident, the majority ignores the physical facts, the testimony of all the other witnesses, and disregards the trial court's evaluation of Rice's testimony as untruthful.
The absolute soundness of the trial court's version of the accident is proven by the testimony of Simoneaux, the driver of the vehicle following Rice. The majority seems to have overlooked the testimony of this defendant, which was accepted as truthful by the trial court, which also held Simoneaux negligent and liable unto the plaintiffs.
Simoneaux positively testified that he saw Rice's brake lights come on once right after the Stelly car entered the highway and then that he saw them go off, indicating that Rice had removed his foot from the brake pedal. Rice did not again re-apply his brakes until at least several "seconds" after the point at which he had first applied the brakes (Tr. 282, 291, 300). This second application of the brakes was the sudden braking which precipitated the accident.
It is well to reiterate again that Simoneaux positively testified several times, without contradiction, that it was "seconds" (not "momentarily", as held by the majority) between Rice's first touching of the brakes and the second sudden, violent application. If Rice was going 60 miles per hour, as he testified, this was a speed of 87.6′ per second; if, for example, instead he was approaching at 40 mph, this was at 58.4′ per second. Thus, in 2-3 seconds, in the interval between his first and second braking, he would have approached from 175 to 262 feet closer to the Stelly car at 60 mph (or at 40 mph, for example, from 116 to 175 feet closer.) This actually is the only satisfactory explanation of how, before the accident, the Rice car had been able to proceed over 290 feet down the highway from the place that Stelly entered it. If Rice had applied his brakes from the first as he testified (falsely, the trial court held), he could have come to a stop about two hundred feet sooner than he did.
The testimony of Simoneaux thus undoubtedly substantiates the version of the *410 accident found by the trial court, and to which all the other witnesses testified, namely: That, at whatever distance Rice had been from Stelly when Stelly first came upon the highway, nevertheless Rice had sufficient time thereafter either to slow or to stop, but that he failed to do this in an imprudent effort to overtake and pass Stelly. The fact that the accident occurred over a city block past the point that Stelly had first entered the highway (proceeding at a very slow rate of speed) proves, in my opinion, that Stelly's entry on the highway had no actionable causal connection with the accident. (The fact that Stelly was driving down the highway at such an aggravatingly slow rate of speed may have caused Rice's impatient and dangerous attempt to pass him; but, so far as I know, the law in effect at the time did not provide that a driver was negligent for driving too slowly.)
It seems to me that the majority's confusion partially results from having accepted as gospel Rice's estimate that Stelly had entered the highway when Rice was just 150-250 feet away, parrotted by Stelly. If this were so, undoubtedly Stelly's negligence would have contributed to an accident; but the accident would have happened far closer to the point of entry than 290′ east of it.
The proven and unshakeable physical fact is that the accident happened 290 feet past the point of Stelly's entry on the highway. No amount of imaginative reconstruction of the events leading to the accident can change this circumstance. This is the one physical fact which is proved objectively, without resort to witnesses' estimates of distances and speeds, notoriously inaccurate after the event. (Rice, for instance, estimated that the accident occurred 150 to 200 feet east of Sebastian's bar, Tr. 385; although the evidence unshakeably proves that the correct distance was 290 feet past. Likewise, Rice did estimate that Stelly was 150 to 250 feet from him at the latter's entry on the road; but, actually, his first answer concerning the subject was, "I am a poor judge of distance, but I would say somewhere between maybe 150 to 250 feet." Tr. 392. And we do not here speak of his obvious bias to exculpate himself, by which he would tend to minimize the distance.)
Rice's estimate that Stelly entered on the highway when he was just 150-250 feet away is obviously mistaken, since it is disproved by the inconsistent fact that the accident happened 290 feet past the point of Stelly's entry. Instead of accepting this obvious conclusion, the majority has sought to rationalize all the other facts of this accident by holding this estimate of this court-found unreliable witness to be concrete factin the process, discarding the testimony of four other witnesses found by the trial court to be accurate and truthful.
I think it is obvious that the majority's rationalization of the facts of the accident is inaccurate as a matter of fact. But, if (as the majority indicates as a possibility) Rice had slowed to fifteen mph and then followed Stelly at that speed "a substantial distance" before the accident occurred, then Rice's imprudent effort to pass and his sudden braking thereafter was, as a matter of law, nevertheless actionable negligence, as would be his failure to slow his speed down to a safe overtaking distance instead of permitting his car to approach so close to Stelly's car as to make an emergency braking stop necessary when unable to pass Stelly due to the oncoming Vidrine vehicle.
As to the liability of Simoneaux, I must confess that I have some doubt whether he was guilty of any misjudgment in the emergency caused by Rice's imprudent attempt to pass Stelly and his sudden braking (see, e. g., Broussard v. Savant Lumber Co., La.App. 3 Cir., 134 So.2d 369, certiorari denied); although Rice's sudden braking may be construed under the circumstances to have been a foreseeable hazard which Simoneaux should have anticipated and therefore have kept a greater distance (Felt v. Price, 240 La. 966, 126 So.2d 330). At this time, however, I am not prepared to state that the trial court committed manifest error in holding Simoneaux's negligence *411 a contributing proximate cause of the accident, along with that of Rice.
For the foregoing reasons therefore, I respectfully dissent from the opinion of my esteemed and scholarly brethren of the majority.

APPENDIX
Footnote 1.
Standard motor vehicle stopping charts show that cars driven at 60 mph will stop as follows:

 Stopping distance from Total braking
 time brakes first applied: distance (including
 reaction time).
 Blashfield Cyclopedia
 of Automobile Law,
 Section 637. 160 226
 Driver's Guide List
 Department of Public
 Safety, page 23. 185 251
 Lawyers' Motor Vehicle
 Speed Chart (1950) 298.3 364.4

The stopping distance chart at 14 Tul.L. Rev. 503 (1940) shows that the total braking distance (including reaction time) at 60 mph under "excellent" conditions is 207.1 feet and under "average" conditions is 265.8 feet.
This chart shows a considerably longer distance under "poor" conditions. However, the majority has held, correctly I think, that the road with its new asphalt surfacing was in good condition and that there was no requirement that Rice proceed at a speed of less than 60 mph under the circumstances. Of course, had the roadway been slick or subject to some condition extending the normal braking distance, then Rice's negligence would additionally include proceeding at a speed too swift under the circumstances to have been unable to stop short of 440-540 feet. (The trial court, in fact, held that Rice's speed was excessive under the circumstances.)

On Application for Rehearing.
En Banc. Rehearing denied.
TATE, J., dissents from denial of rehearing.
SAVOY, J., is of the opinion that a rehearing should be granted as to Stelly and that Stelly should not be held responsible in this case.