HARDY, Judge.
This is an action on behalf of the widow and children of the decedent, Paul Parnell, for damages for his death as the result of an automobile accident. From judgment in favor of plaintiff widow in the sum of $3,-000.00 and in favor of the six plaintiff children in the sum of $2,000.00, against the defendant, New York Fire & Marine Underwriters, Inc., the said defendant has appealed. The judgment represents the extent of the policy liability of the named insurer, who was the only one of the several party defendants against whom the action was prosecuted and judgment rendered.
The accident occurred about 6:20 A.M. on July 19, 1964, in the limits of the Town of Farmerville, Union Parish, on Louisiana Highway #2, when a loaded pulpwood truck being driven by Elton L. Stringfellow east on the highway collided with a tractor-tank-trailer unit loaded with 9,000 gallons of gasoline, which was being driven by decedent, Paul Parnell, in a southerly direction across the highway.
We think the preponderance of the evidence reflected by the record clearly establishes the material facts which we proceed to summarize. The gasoline tank unit was owned by Wheeling Pipeline, Inc., and was being driven by its employee, Paul Parnell; the load of gasoline was intended for delivery to a bulk gasoline plant of the Lion Oil Company distributor in Farmerville; prior to the collision the gasoline tank unit had been moving east on Highway #2 but the driver had pulled the unit off of the highway and onto an asphalt parking area where it was brought to a stop in front of the Town House Restauarant. After remaining at a stop for an appreciable period of time — estimated by one of plaintiffs’ witnesses at a minimum of one and one-half minutes — the driver began to move the unit slowly along the parking area parallel to and at a distance of approximately 12 to 14 feet from the north edge of the 21 foot wide paved slab of the highway. Upon reaching a point approximately opposite the easternmost intersection with the highway of the private driveway leading to the Lion Oil Company plant the unit was turned in a southeasterly direction angling across the highway for the obvious purpose of making entry into the driveway of the Lion plant. As the front of the cab reached a point some three to five feet south of the center line of the highway, and, therefore, the same distance within the eastbound traffic lane, the right front of the cab was struck by the left front of the pulpwood truck. Parnell, driver of the tank truck, was thrown out of the right-hand door of the cab and instantly killed. The tank truck unit came to a stop in a ditch off the south shoulder about 100 feet, more or less, east of the point of impact, while the pulpwood truck, after scraping along the side of the tank wagon unit and in front of the cab, came to a stop a few feet north of the highway at a point approximately 185 feet from the point of impact.
Contemporaneously with the movement of the tank truck unit as above described, the pulpwood truck, according to the uncon-troverted testimony of Stringfellow, the driver, was moving east in its proper right-hand lane of travel at a speed of 25 to 30 miles per hour. Stringfellow testified that he noticed the tank truck stopped in the parking area in front of the Town House Restaurant when he was approximately 300 feet away; that he observed the truck begin to move parallel with the highway and that it began to turn onto and at an angle across the highway at a time when his truck was about 85 feet west of the driveway entrance to the Lion plant. Upon observing this movement Stringfellow testified that he blew his horn, forcibly applied his brakes and turned his truck to the right, despite which actions he was unable to avoid the collision with the gas truck unit which continued to move directly into the path of his truck.
*509 The material physical circumstances surrounding the accident which are conclusively established by the evidence in the record may be noted as follows:
The tire tracks of the pulpwood truck indicated its'movement to its right beginning at a point some 85 to 90 feet west of the point of impact; the imprint of the tire treads of the pulpwood truck indicated that the brakes had been forcibly applied at a point slightly more than 50 feet west of the point of impact, and, at the point of impact, the right wheels of the pulpwood truck were on the shoulder of the highway four or five feet south of the edge of the pavement. The force of the impact knocked out the brakes of the pulpwood truck, which, as above noted, finally came to a stop some 185 feet from the point of the impact. Jesse Gatson, owner of the pulpwood truck, testified that the braking system of the truck, which was a hydraulic and vacuum booster type, had been worked over only nine or ten days before the accident, at which time new brake cyclinders and brake linings had been installed. The record contains convincing evidence that the braking system of the pulpwood truck was in effective working order at the time of the accident. There is no question as to the fact that the cab of the tank truck unit had encroached upon the south lane of the highway for a distance of several feet, at which time the remainder of the 55 foot long unit extended north across the entire width of the highway and into the parking area on the north side thereof.
Plaintiffs specified several charges of negligence against Stringfellow, the driver of the pulpwood truck, as constituting the proximate cause of the accident, which charges we proceed to discuss, seriatim.
The charge of operation of the pulpwood truck at an illegal rate of speed in a 25 mile per hour speed zone in violation of a City ordinance was effectively controverted. The record discloses that the speed limit was 35 miles per hour and there is not the slightest evidence which contradicts the testimony of Stringfellow and another witness that his speed was within the limits of 25 to 30 miles per hour. Additionally, it may be noted that the speed of the pulpwood truck in no degree caused or contributed to the occurrence of the accident.
The claim of Stringfellow’s failure to maintain a proper lookout is not supported by any evidence whatsoever. Again, Stringfellow’s uncontradicted testimony establishes the fact that he was aware of the position of the tank truck at a distance of 300 feet and that he kept it under observation up to the very moment of the collision.
The charge that Stringfellow failed to take any action to avoid the accident not only falls because of a complete failure of proof, but, on the contrary, the testimony as to physical factors completely corroborates Stringfellow’s testimony of his actions in applying his brakes and turning as' far as possible onto the right shoulder of the highway. The only disputed fact relates to the blowing of the horn, which we do not consider to be of material importance. The conclusion is inescapable that Stringfellow recognized the imminence of danger at the earliest moment that it could and should have been observed, and that he took every reasonable, indeed, every possible precaution to avoid the collision.
There is no testimony to support the claim that the pulpwood truck was being operated with faulty brakes, and, again to the contrary, the evidence substantially preponderates in support of the conclusion that the brakes were in effective working condition.
The immediately foregoing factual findings serve to dispose of the general charge of negligence adversely to plaintiffs’ claim that the pulpwood truck was being operated in such manner as not to be under control of the driver.
Turning now to a consideration of the operation of the tank track unit, we find the following facts to be significant :
The maneuver involving the crossing of a highway from a private parking area on one side for the purpose of entering *510 a private driveway on the opposite side was an operation of such obvious danger as to require extreme care and caution. Unquestionably, it was desirable, even if not absolutely necessary, for the driver of the long and somewhat cumbersome unit to engage in this nature of operation rather than attempt to turn at right angles off of the narrow highway into the driveway on the premises of the Lion Oil Company, which was his destination, as would be the nature of a turn by a more maneuverable small truck or passenger type vehicle.
Nor can there be any question that every standard of normal, reasonable and practical operation, to say nothing of oft-enunciated legal declarations, demanded strict compliance' with certain precautions. Certainly, the driver should have given indication of his intention to make a right turn onto and across the highway, yet our examination of the record has failed to disclose a single word of testimony or shred of evidence which would establish the fact that such a signal was given.
It was further incumbent upon the driver to make careful observation of traffic on the highway which he intended to cross. In this connection we note the finding of the trial judge to the effect that, because Parnell brought his vehicle to a stop before turning and attempting to move across the highway, he must have made adequate observation. Unfortunately; this is a non sequitur based upon speculation. The fact is that Parnell had the same opportunity for proper observation as did Stringfellow, and there is no reasonable explanation as to why, if he made any observation, he could not and did not perceive the approach of the Stringfellow truck. This opportunity for observation existed not only before Parnell began his turn to-. ward the highway but continued during the time the cab of his truck traversed the 12 to 14 feet of the parking .space north of the highway, the north lane of the highway, and actually encroached several feet into • the south lane in the very path of the eastbound pulpwood trupk.
The obligation upon a motorist entering or crossing a highway from a private road, driveway or building to yield the right-of-way to approaching vehicles is fixed by statute, LSA-R.S. 32:124.
The duty of extreme care imposed upon a motorist entering or crossing a highway from a private drive or other area has been oft enunciated and emphatically declared in our jurisprudence. Among recent cases reiterating this principle are Smith v. Hearn (2d Cir., 1965), La.App., 181 So.2d 433; Vidrine v. Simoneaux (3rd Cir., 1962, writs denied), La.App., 145 So.2d 400.
The operation involved in the instant case, that is, the entry upon the highway from a private parking area and the crossing of the highway for the purpose of entering a private drive on the opposite side but multiplies the nature and degree of caution and extreme care imposed upon the driver by the statute, by our jurisprudence and by every rule of reason, prudence and common sense.
After painstaking examination of the record we aré convinced (1) it fails to disclose any support for a conclusion that Stringfellow, driver of the pulpwood truck, was guilty of any act of negligence which could be considered to be either a proximate or contributing cause of the accident; (2) that the sole and proximate cause of the accident was due to the negligence of Parnell, driver of the tank truck unit in (a) failing to take even normal and reasonable precautions in executing ah exceptionally dangerous operation; -(b) in failing to make proper observation which could and would have disclosed the approach of the pulpwood truck which was entitled to the right-of-way ;' and (c) in encroaching upon- the path of travel of an approaching vehicle at a time when the danger of such action could and should- have 'been apparent even by casual observation.
In our consideration of this case we have noted the attack made- by counsel for plain- • tiffs-appellees upon the credibility of Willie Robert Smith, who testified on behalf of *511 defendant as an eye witness to the accident. Counsel’s conclusion was that there was a strong doubt as to whether this witness, was, as testified, driving a vehicle following the pulpwood truck and actually observed the occurrence of the accident. While we are unable to accept this conclusion, we think it may be effectively disposed by the comment that even if the testimony of this witness should be wholly disregarded, the facts upon which we have based our conclusions are, nevertheless, preponderantly established.
For the reasons assigned the judgment appealed from is annulled, set aside and reversed, and
It is now ordered, adjudged and decreed that there be judgment in favor of the defendant, New York Fire & Marine Underwriters, Inc., rejecting plaintiffs’ demands at their cost.