REDMANN, Judge,
dissenting.
Snelling’s exaction from Niven of an assignment of wages[1] (according to Snelling’s fee calculation, 93% of Niven’s wages during each of the first two months of the employment!) makes the contract “void and unenforceable in any court”,[2] La.R.S. 23:112:
*1010 “No employment agency shall receive or require any applicant to execute any . . . assignment of wages or salary . . . unless said document has been approved both as to form and content by the commissioner of labor or his authorized representative. The commissioner shall approve any such papers such as are permitted by this section. Every such paper or other document executed contrary to the provisions of this section shall be void and unenforceable in any court.” (Emphasis added.)
The statute declares a general rule of voidness and unenforceability. It does contain an exception, for any “document . approved both as to form and content by the commissioner of labor . . ..” A
litigant who claims the benefit of an exception to a general rule bears the burden of establishing that he comes within the exception; Hortman-Salmen Co. v. White, 1929, 168 La. 1049, 123 So. 709. Plaintiff did not present any evidence to avoid the general rule’s applicability and therefore thé contract sued on is “void and unenforceable in any court.”
The judgment against Niven should therefore have been in his favor, dismissing Snelling’s suit. The correct judgment as between Niven and Palmer is therefore one dismissing the third-party demand. Surely Palmer should not pay for Niven’s failure to appeal, even if no relief can be given to Niven.
Because Niven did not himself appeal, ordinarily the judgment against him would not be subject to reversal or modification on this appeal. However, the evidence establishes, if anything, that it was Palmer with whom Snelling struck an agreement to be paid for services. Palmer was the principal debtor, and Niven was but a surety for Palmer’s debt.[3]
Because Niven' was Palmer’s surety, Palmer owes to Niven both an indemnification against being made to pay the debt, C.C. 3057,[4] and reimbursement of any actual payment, C.C. 3052.[5] It is only “[wjhen the surety has paid without being sued and *1011 without informing the principal debtor, [that] he shall have no recourse against the latter, provided that, at the time of payment, the debtor was in possession of such means as would have enabled him to have the debt declared extinct; . . . ” C.C. 3056. (That article continues “but in this case [of no suit against the surety] the surety has recourse to the creditor for restitution.”)
Our surety, Niven, did inform the principal debtor, Palmer, (by third-partying him) and therefore does have recourse against him. That being so, Palmer could have intervened in the trial court in the Snelling v. Niven action, and therefore has the necessary interest in the judgment against Ni-ven to seek its modification by appeal under La.C.C.P. 2086: “A person who could have intervened in the trial court may appeal, whether or not any other appeal has been taken.” Palmer did appeal from the one judgment rendered (although his sole expressed interest was that the third-party demand against himself be dismissed), and his appeal brings before this court that judgment in its entirety (unlike an answer to an appeal, C.C.P. 2133) insofar as pertinent to Palmer’s interest, including the judgment against Niven.
We should reason that Palmer’s obligation of reimbursement and indemnification towards his surety, Niven, obliges Palmer to pay Niven if Niven remains cast, and therefore Palmer’s appeal of necessity brings before us for review the judgment against Niven in favor of’Snelling. To rule otherwise is to obliterate Palmer’s right of appeal. Niven, after all, is in the position of being unconcerned: whatever he is cast for, his evidently solvent ex-employer Palmer owes him. If Palmer’s appeal does not allow reversal of the judgment against Ni-ven then Palmer’s appeal is futile.
This view is analogous to that of Emmons v. Agricultural Ins. Co., 1963, 245 La. 411, 158 So.2d 594. Emmons held that an appeal by one of two defendants sued as joint tortfeasors brought up for review the judgment dismissing the other (in which plaintiff had acquiesced, though appealing on quantum), despite the cast defendant’s not having third-partied the other. The court reasoned that the cast defendant could be entitled to contribution from the other defendant and thus could have intervened in a suit against the other defendant alone: and the cast defendant therefore had the right to appeal, C.C.P. 2086, as a party aggrieved by the dismissal of the other defendant. Our situation is analogous: because Niven is Palmer’s surety, to whom Palmer owes indemnification and reimbursement, Palmer could have intervened in a suit against Ni-ven alone and could have appealed a judgment against Niven, as a party aggrieved by the casting of Niven. (See also Vidrine v. Simoneaux, La.App. 3 Cir. 1962, 145 So.2d 400, cert. denied, factually similar to Emmons except that Vidrine’s plaintiff did not appeal at all [and cast defendant Aetna had third-partied the non-cast defendant]. Yet on the appeal of defendants Aetna and Simoneaux, cast in solido, the Court of Appeal, after reversing as to Aetna [making the third-party demand moot], rendered judgment on the main demand in favor of the non-appealing plaintiff against the defendant [Stelly] who had not been cast by the trial court. Vidrine, like Emmons, relied on C.C.P. 2086.)
One is aware that — if Palmer did originally agree to employ and pay Snelling (Palmer testifies he did not[6]) — the correct final result should be judgment for Snelling against Palmer (for only $1,392, see n. 2, less $900 paid). There seems to be a certain inconsistency in ruling in Niven’s favor, although he did not appeal, while refusing to rule in Snelling’s favor, because Snelling did not appeal. But, because Palmer was not aggrieved by the judgment dismissing *1012 Snelling’s claim against Palmer, one cannot say that it too is brought before us by Palmer’s appeal.[7]
One may nevertheless note that Snell-ing’s claim against Palmer should be rejected. Snelling’s written contract form for a prospective employee ties him hand and foot, making him promise to pay the fee both as principal obligor and as surety of the prospective employer; and Snelling obliges the prospective employee to sign its form even though he accepts only fee-paid interviews, and the contract therefore does not reflect the real agreement of the parties.
Yet the same Snelling claims that it had only an oral agreement with a prospective employer — -not even a letter from the employer acknowledging an agreement to pay the fee. Improbable.
Moreover, it appears that Snelling’s ploy of persuading the employee to sign (“although it’s fee-paid”) enables it to ignore (as it first did here) its alleged oral agreement with the employer and to proceed against the employee alone, in derision of its initial agreement with him that he would be sent for interviews only to employers who had agreed to pay the fee. Under Snelling’s modus operandi, no agreement with Palmer was ever necessary; all that was necessary was to tell Niven that there was an agreement with Palmer. And that is all that Snelling proved: not that there was an agreement with Palmer, but only that Snelling told Niven that there was one.
The judgment appealed from should be reversed insofar as it cast Niven on the main demand and Palmer on the third-party demand.

. The contract provided “I assign my compensation up to the amount of my fee to you, and request and authorize my employer to honor this assignment according to the terms of this contract, and to withhold this sum from my pay and remit directly to you.”

. If the contract were not wholly void, we should at least reduce the judgment to the proper fee. The contract provides a fee schedule in percentages graduated (as federal income tax is) according to income, from 2% on the first $1,799.99 of annual salary to 14% on all above $14,000. Snelling interprets it to charge the highest percentage on the entire salary. For example, Snelling calculates the fee on a salary of $13,999.99 at 12% of the whole $13,-999.99, or $1,680: and on a salary of one penny more, $14,000, at 14% of the whole $14,000, or $1,960. Snelling’s interpretation thus leads to the absurd consequence that a one-cent increase in salary brings a $280 increase in fee. This absurd result is untenable even if the contract words were clear; C.C. 1945(3). At best the words are ambiguous and would therefore be construed against Snelling, who drafted the contract; C.C. 1958; Alexandria Empl. Serv. v. Box, La.App. 3 Cir. 1973, 282 So.2d 776. Thus *1010 the obligatory interpretation of the contractual fee schedule is that the first $1,799.99 of salary brings a 2% fee, and each additional bracket of salary brings an increasingly higher percentage applicable only to the portion of salary within that bracket, up to $13,999.99, and any part of salary higher than $13,999.99 brings the maximum fee of 14% on that part of the salary. This calculation establishes that the correct fee is not $2,520, or 14% of the whole $18,000 salary, but $1,392.

.Only Niven and Mrs. Ward of Snelling have knowledge of the dealings between Niven and Snelling. They both testified that their agreement was that Niven would only be referred to employers who would pay Snelling’s fee; that Niven was not interested in any job on which he would have to pay a fee. This agreement is also reflected by the note written by Mrs. Hunt when she mailed the written contract to Niven: “Please fill out front and sign back — although it’s fee paid — you still must sign.” A later letter to Niven from Snelling also recited Palmer’s primary liability but demanded that Niven pay the fee or quit the job within five days in accordance with this contract (a matter raising public policy questions here pretermitted). Accordingly parol evidence of Palmer’s promise to pay the fee is not excludable under C.C. 2278(3) because that promise was not to pay the debt of Niven. To the contrary, it was Niven who by his written contract promised to pay Palmer’s debt if Palmer did not pay it. Thus Niven became Palmer’s surety, C.C. 3035 (but with the contractual option to escape liability by quitting the employment within five days of demand by Snelling). There is no other basis in the record upon which Niven could be held liable to Snelling. The contract sued on has two contradictory bases for liability — a primary and principal promise to pay and a secondary promise — but the testimony establishes that it is only the secondary promise which is applicable.

. A surety may, even before making any payment, bring suit against the debtor to be indemnified by him:
1. When there exists a lawsuit against him for payment. .

. The surety who has paid the debt, has his remedy against the principal debtor, whether the security has been given with or without the knowledge of the debtor.
This remedy takes place both for the principal and interest, and for the costs which the surety may have been sentenced to pay; but with regard to the costs, the remedy of the surety begins only from the day he has given notice to„ the principal debtor, that a suit was commenced against him.

. The possibility of fraud is evident (though not here at issue): an agency falsely tells a prospective employee that its fee is to be paid by the employer, but insists (as here occurred) that the employee must nevertheless sign a contract agreeing to pay the fee.
Is a placement fee owed to an employment agency which sends to an employer who has not agreed to pay its fee a prospective employee to whom it has promised to recommend only prospective employers who have agreed to pay its fee?

. The only apparent solution to the jigsaw dismemberment of a case on appeal is a rule that appeals bring the entire case before the appellate court, just as the entire case is before the trial court. The legislative rule to the contrary should be repealed (or invalidated as a violation of the separation of powers, La.Const. art. 2, § 2).