The WESTERN CASUALTY AND SURETY CO., a corporation, Plaintiff,

v.

HARRIS PETROLEUM COMPANY, Inc., a corporation, Seaside Oil Company, a corporation, Benjamin Harris, Jr., John V. Campo, Virgil E. Sackman, and Elizabeth Sackman, Defendants.

Civ. No. 62–1223.

United States District Court
S. D. California,
Central Division.

Aug. 7, 1963.

Frank Wickhem, Los Angeles, Cal., for plaintiff.

Booth, Mitchel, Strange & William, by George C. Mitchel, Los Angeles, Cal., for defendant Seaside Oil Co.

Oliver, Good & Sloan, by Richard L. Oliver, Los Angeles, Cal., for defendants John V. Campo, Virgil E. Sackman and Elizabeth Sackman.

CARR, District Judge.

This is an action for declaratory relief pursuant to U.S.C., Title 28, §§ 2201 and 2202, to determine the liability of plaintiff insurance company under a policy issued to defendant Harris Petroleum Co., Inc. The plaintiff insurance company issued a comprehensive liability-type policy including automobile liability insurance for "owned automobiles" to the Harris Petroleum Company, Inc., for the 1960–61 policy year. A detailed list of exposures, referred to by the parties as the "work sheet," was made by the insurance company but was not attached to the 1960–61 policy. The 1956 Pontiac station wagon in question here was included in this list of exposures.

Immediately prior to the expiration of the 1960–61 policy, the plaintiff insurance company issued another comprehensive liability-type policy, including automobile liability insurance for "owned automobiles," to Harris Petroleum. A detailed list of exposures, or so-called work sheet, was also made by the insurance company but was not attached to the 1961–62 policy. Furthermore, the 1956 Pontiac station wagon was not included in the list of exposures. Prior to the issuance of the 1961–62 policy, correspondence was carried on between the agents of the plaintiff insurance company and Harris Petroleum in which Harris Petroleum indicated that it desired to reduce its insurance premiums and the insurance company advised that to do so Harris Petroleum would have to eliminate some of its exposures. The insurance company forwarded the 1961–62 policy to the insured in a letter of January 20, 1961, and in such letter stated: "We are not carrying, either, you will notice, Ben Jr.'s automobile [1956 Pontiac] * * *." This correspondence is part of the "extrinsic" evidence that defendant Seaside Oil Company urges the court to exclude under the parole evidence rule.

The 1961–62 insurance policy under consideration by this court is a comprehensive liability-type policy in which coverage automatically attaches for all "owned automobiles" of the insured Harris Petroleum Co., Inc. The policy expressly provides that the premium charged at the inception of the policy period is only a provisional premium and that upon the termination of the policy or at the end of the annual period of the policy the actual earned premium will be computed by the insurance company and, in the event that the earned premium exceeds the provisional premium, the insured will be liable for the difference. The policy further provides that the insurance company will be permitted to make an inspection and audit of the insured's records and property both during and after the policy year in order to determine the exposures covered by the policy so that the actual earned premium can be calculated.

The question to be determined here is whether the 1956 Pontiac station wagon was covered by the 1961–62 policy. This station wagon was involved in a fatal automobile accident during the policy year, 1961–62, and the plaintiff contends that the policy did not cover this vehicle because both the plaintiff insurance company and Harris Petroleum intended it to be omitted from coverage. Defendant

Seaside Oil urges that, since the Pontiac in question was in fact owned by Harris Petroleum at the date of the accident, it is within the term "owned automobiles" as defined in the policy. Defendant Seaside Oil urges that parole evidence should not be admitted in regard to whether the vehicle in question was covered since, if it was owned by Harris Petroleum at the time of the accident, it is covered by the written contract of insurance and parole evidence should not be allowed to vary or extend or alter the clear "owned automobiles" coverage provision of the policy. Defendant Seaside Oil, in the alternative argues, that, even if the parole evidence is allowed concerning the correspondence and communications between plaintiff's agent and the Harris Petroleum Co., Inc., preceding the issuance of the 1961–62 policy, it was the intent of the parties that all "owned" automobiles were to be covered. The plaintiff insurance company's amended complaint admits that Harris Petroleum at all times actually was the true owner of the 1956 Pontiac station wagon in question.

■■ At the outset it must be determined what law applies:

"An insurance policy is a contract, and a Federal Court in a diversity of citizenship case will look to the conflict of laws rule of the forum on the subject of contracts. Klaxon Company v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477; Griffin v. McCoach, 313 U.S. 498, 503, 61 S.Ct. 1023, 85 L.Ed. 1481." Prudential Insurance Company v. Heyn (S.D. Cal., 1956), 139 F.Supp. 602, 608.

The applicable California law is clearly stated in 9 Civil Code, § 1646:

"LAW OF PLACE. A contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."

The insurance contract in question was made in the state of Washington. Here there was no provision in the insurance contract as to the applicable law, and in such a situation the contract is generally deemed performable where made or where the circumstances indicate that the parties expected or intended it to be performed. It is noted that most of the property of the insured as well as the principal place of business of the insured were located in the state of Washington. At any rate, the parties conceded that the law of Washington is applicable. Thus the parole evidence rule applicable in the state of Washington is controlling in the instant case.

■■ The general rule is that in the federal courts the parole evidence rule is a rule of substantive law and the law of the state of the forum is to be applied. Black v. Richfield Oil Corporation (S.D. Cal., 1941), 41 F.Supp. 988, 993, aff., 146 F.2d 801, 804 (C.C.A. 9th, 1944), cert. den., 325 U.S. 867, 65 S.Ct. 1404, 89 L.Ed. 1986. In California, it has been held that the parole evidence rule is a rule of substantive law and the general conflicts of law rule in the interpretation of contracts is applicable in determining its usage. Hutchinson v. Hutchinson (1941), 48 Cal.App.2d 12, 119 P.2d 214. According to the law of Washington, there are two types of ambiguities in contracts: patent ambiguities and latent ambiguities. A patent ambiguity is such as exists or appears on the face of the writing itself, while a latent ambiguity arises when the writing upon its face appears clear and explicit but there is some collateral matter which makes the meaning uncertain. Fagan v. Walters (1921), 115 Wash. 454, 197 P. 635, 637. In Leavenworth State Bank v. Cashmere Apple Co. (1922), 118 Wash. 356, 204 P. 5, 7, the Supreme Court of Washington announced the general rule:

"The proper rule is laid down in 6 R.C.L. 849, as follows:

" 'Courts, in the construction of contracts, look to the language em-

ployed, the subject-matter, and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and accordingly they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and of the correct application of the language to the things described.' "

Although the above language in the Leavenworth case, supra, is very broad and "liberal" in allowing parole evidence, the facts involved in the case must be examined to place the broad language in its proper perspective. In Leavenworth, a written contract existed to sell and purchase "125,000 apple boxes to be manufactured" in certain sizes and dimensions. The court held that it was proper for the trial court to allow the seller to put into evidence parole statements demonstrating that both the buyer and seller knew that the seller had only one factory at which it manufactured apple boxes and the court then held that with this evidence in mind the contract was one to manufacture boxes at a *certain* factory and the seller was not liable for failure to deliver when that factory was destroyed by fire under a provision in the contract that it was executed subject to fires.

In Leavenworth, the court allowed the parole evidence to define the word, "manufacture." In this case, plaintiff urges the admission of parole evidence consisting of the correspondence and oral testimony of the agents of plaintiff and the insured in an effort to define the words "owned automobiles" within the meaning of the policy. It is unnecessary to decide whether the word, "manufacture," standing alone, is more ambiguous than "owned automobiles." In the case at bar, the parole evidence does not necessarily alter the meaning of the words, "owned automobiles," since, as will be hereinafter noted, the parties undoubtedly intended to have all "owned automobiles" covered.

In Vanca v. Ingram (1943), 16 Wash. 2d 399, 133 P.2d 938, 944, the Supreme Court of Washington enunciated a broad view respecting "surrounding circumstances leading up to the execution of an agreement," but parole evidence was rejected which was offered in an effort to construe a written partnership agreement as a debtor-creditor relationship.

The state insurance code, Laws of 1947, Chap. 79, Sec. 18.19 (R.C.W. 48.-18.190), provides:

"* * * No agreement in conflict with, modifying, or extending any contract of insurance shall be valid unless in writing and made a part of the policy."

This statute has been applied by the Supreme Court of Washington in a case which is very analogous to the case before this court. In National Indemnity Company v. Smith-Gandy, Inc. (1957), 50 Wash.2d 124, 309 P.2d 742, the insurer brought action against the insured and broker for declaratory judgment that an automobile liability policy was not in force at the time of the accident. The facts were that the insured made a telephone call to the insurer on June 7, 1955, at 3:15 p. m., requesting the issuance of insurance upon a truck which was then in transit from a foreign state, and the insurer stated to the insured that insurance coverage would commence at 3:15 p. m. on June 7, 1955, and the insured, pursuant to the insurer's instruction, confirmed the telephone conversation by written letter including the statement that the effective commencement of the insurance policy was at 3:15 p. m. on June 7, 1955. Upon receipt of the letter, the insurer issued a liability policy with a provision that the policy was effective beginning June 7 at 12:01 a. m. The truck in question was involved in an accident at 2:15 p. m. on June 7, 1955 (one hour before the telephone conversation requesting the insurance, about 18 hours before the letter of confirmation was sent by the insured, but 14 hours after the effective commencement date contained in the written policy), in a foreign state.

The court, in its opinion, stated the above facts and referred to Revised Code of Washington, 48.18.190, supra, and then held:

"We must hold that the telephone conversation and the letter of confirmation did not change the terms of the policy subsequently issued." National Indemnity Company v. Smith-Gandy, Inc., supra, 309 P.2d 745.

■ National Indemnity appears controlling in this case, and the parole evidence rule should bar the consideration of the previous policies and the correspondence between Sam Cox (insurer) and the Harris Petroleum Company agents (insured). Since the Washington Supreme Court has held that it will apply the effective date contained in a written insurance policy despite prior oral and written communications between the parties agreeing to a subsequent effective date and by so doing include an accident within the policy's coverage which in fact took place prior to the initial telephone conversation and written letter of confirmation, surely the same Washington court would not permit the written terms of an insurance policy to be varied to exclude an actually owned automobile from being an "owned automobile" within the coverage provision of the policy. Plaintiff's attempts to distinguish National Indemnity are not persuasive, since the parole evidence in question here would do violence to the literal meaning of the words in the policy, as was the case in National Indemnity.

■■ Plaintiff urges that Condition 1 "premium" of its policy specifically refers to the exposure "work sheet" of the insured and makes it a part of the written policy and, since this work sheet does not list the 1956 automobile as an exposure, it is not covered within the meaning of the "owned automobiles" section. Actually, the provision that plaintiff apparently refers to merely requires the insurer to maintain "detail of premium makeup not appearing in the policy" so that it will be available to the insured if he requests. Such records cannot be deemed to be a part and parcel of the insurance policy itself. This is especially true in light of the policy's being one in which the premium charged at inception is only a provisional premium and the actual premium is not calculated until the end of the policy year. Plaintiff cites no Washington cases which substantiate in any way its argument of incorporation by reference. A calculation sheet, prepared by only one party, cannot be said to be part of a binding agreement between two or more parties although it may be available for inspection by the other party or parties.

■ Even if the extrinsic evidence is admitted to clarify the term, "owned automobile," the 1956 Pontiac automobile should be included within coverage of the policy. The extrinsic evidence demonstrates that the insured, Harris Petroleum Company, desired to reduce its insurance expense; but the insurer's agent, Sam Cox, stated in his deposition that it was the intention of the insurer to insure all automobiles owned by Harris Petroleum and that Harris Petroleum would be charged a premium expense for all automobiles owned by it. The audit at the end of the year would disclose the actual exposures whether or not listed on the "work sheet." Cox believed that the automobile in question had been transferred to Ben Harris, Jr. It is difficult to determine from B. F. Harris's deposition whether he believed that Ben Harris, Jr., was the titleholder of the 1956 Pontiac. It appears from the extrinsic evidence that the 1956 Pontiac was eliminated from coverage in the 1961–62 policy upon the premise that the title had been transferred or at least registered in the name of Ben Harris, Jr., which was not the fact. It appears that the agents of both plaintiff and the insured mistakenly believed that the Pontiac had been transferred.

In view of the foregoing, whether or not the extrinsic evidence is considered, the conclusion is inescapable that the 1956 Pontiac station wagon was within the coverage of the 1961–62 policy. Judgment will be entered accordingly.