The **TRAVELERS INDEMNITY COMPANY**, Plaintiff,

v.

Samuel T. **DEES**, d/b/a Dees Used Cars, **South Carolina Insurance Company**, **James M. Foxworth**, **Eugene E. Covington**, **Katherine Crumpler** and **Helen G. Crumpler**, Defendants.

**Civ. A. No. 8254.**

United States District Court
E. D. South Carolina,
Florence Division.

Nov. 17, 1964.

Shepard K. Nash, and John S. Wilson, Sumter, S. C., for plaintiff.

Joseph L. Nettles, Columbia, S. C., for defendant South Carolina Ins. Co.

HEMPHILL, Chief Judge.

Action for declaratory judgment by plaintiff The Travelers Indemnity Company (hereinafter referred to as "Travelers") seeking to have this Court determine the rights of the parties under the terms of a contract of insurance issued by Travelers to defendant James M. Foxworth, and under an insurance contract issued by defendant South Carolina Insurance Company, (hereinafter referred to as "South Carolina") to defendant Samuel T. Dees. This matter was heard by the Court without a jury at Florence, South Carolina, on October 15, 1964.

On September 28, 1962, Travelers issued to Foxworth a family automobile policy No. LP6539899 in which he was the named insured, and a 1956 Cadillac and a 1956 Nash was therein described as the "owned automobiles". The Travelers' policy contains the following provision:

> "(Clause 22) Other Insurance. If the insured has other insurance against a loss covered by Part I of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; *provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance.*" (Emphasis supplied)

Defendant S. C. Insurance Company on January 10, 1963, issued to defendant Samuel T. Dees its garage liability policy No. 2388, in which Dees (a used car dealer) was designated the named insured. The policy insured all automobiles owned by Dees as therein provided and additional insureds under said policy included: "Any person while using, with the permission of the named insured, an automobile to which the insurance applies .* * * provided such person's actual operation * * * is within the scope of such permission."

On July 20, 1963, while both policies were in force, defendant Foxworth obtained a 1960 Lincoln automobile from defendant Dees and became involved in a wreck at Myrtle Beach, S. C., in which defendants Covington, Katherine Crumpler and Helen G. Crumpler received injuries. At least two actions in the State Court have been instituted against Foxworth as a result of said accident with the Lincoln automobile. Plaintiffs in the State Court actions for damages have been made parties defendant in this litigation.

Travelers contends that the policy of defendant South Carolina provides primary coverage because the Lincoln automobile was a "non-owned" automobile insofar as it was related to plaintiff's policy and to defendant Foxworth. South Carolina contends it has no obligation under its policy because possession of the Lincoln had been transferred to Foxworth "pursuant to an agreement of sale" which excludes Foxworth as an insured under the policy. It relies on the quoted exclusion under Part I of its policy.[1]

The primary issue for determination is the question of ownership of the 1960 Lincoln driven by Foxworth at the time of the accident.

In the treatment of the issue involved here, once it has been determined that the Lincoln operated by Foxworth at the time of the collision (which collision in actuality precipitated this controversy) was a "non-owned" automobile, except for the "excess" clause, designated Clause 22 under the "conditions" made a part of the Travelers policy, we must of necessity reconcile the two sections of the policy because under the exclusions designated as applicable to Part I of the policy, there is a clause which reads as follows:

"(h) to a non-owned automobile while used (1) in the automobile business by the insured or (2) in any other business or occupation of the insured except a private passenger automobile operated or occupied by the named insured or by his private chauffeur or domestic servant, or a trailer used therewith or with an owned automobile."

The defendant Dees testified that he was a used car dealer in Sumter, S. C.; that he owned the 1960 Lincoln and had it on his car lot for sale for several months prior to July 20, 1963. He and defendant Foxworth were well acquainted and lived about one block from each other. On Saturday, July 20, 1963, Foxworth came to the used car lot and discussed trading his Cadillac for the 1960 Lincoln. By agreement Foxworth drove the Lincoln to his home to see if his wife liked it and was gone a very short while. On his return he stated that his wife liked the car and Dees made him a "trade-in difference" offer for a trade between the two cars. Foxworth did not accept the figure but stated that it was too much, whereupon the parties agreed that Foxworth would drive the Lincoln to Myrtle Beach over the weekend and on the following Monday morning would either buy the car or return it. Dees

1. This provides (under Part I—Liability) that: "None of the following is an insured: * * * (iii) any person or organization other than the named insured with respect to any automobile (a) owned by such person or organization or by a member (other than the named insured) of the same household, *or (b) possession of which has been transferred to another by the named insured pursuant to an agreement of sale.*" (Emphasis supplied.)

**518**

stated that he gave Foxworth a paper on which was written that "the car was being driven by Foxworth until Monday and that he would either bring the car back or trade it, one or the other" but that the paper was not intended to be an invoice or bill of sale. However it was written on the same form that Dees used for his bills of sale. Dees testified that no figure or price was written in on the paper which he gave Foxworth and that Foxworth did not sign the paper. Dees testified that his reason for giving Foxworth the paper was so that he would have something to show a highway patrolman if he had an accident with the Lincoln, since the Lincoln carried Florida license tags. Dees further testified that Foxworth paid no money on the Lincoln and that Dees was prepared to cut the price about $50.00 more in order to trade with Foxworth and was confident that they would be able to get together on the price. Dees stated that Foxworth left his Cadillac on Dees' lot when he took the Lincoln.

Foxworth testified substantially the same as Dees as to the transaction except that he denied leaving his Cadillac with Dees over the weekend. He stated that after he drove the Lincoln from Dees' car lot, someone at his direction went back and drove the Cadillac from the car lot to his home. Foxworth admitted telling the highway patrolman after the wreck that he had purchased the Lincoln on the same day of the wreck. He denied having paid any money to Dees or signing the paper furnished him by Dees. He stated that he never agreed with Dees on a definite price for the Lincoln or that he had obligated himself in any way to purchase it but that his agreement with Dees was that he would either trade with him or take the car back on the following Monday.

Mr. Lloyd C. Parker of the S. C. Highway Patrol testified that he investigated the accident in Myrtle Beach on July 20, 1963, and talked with defendant Foxworth at the hospital shortly after the accident. He asked Foxworth for the vehicle registration and Foxworth stated that he had bought the Lincoln automobile that day as a present for his wife and handed him a paper which the patrolman referred to as a bill of sale. On cross examination the patrolman admitted that the only thing he noticed particularly about the paper was that it had the date, year, model and serial number of the Lincoln automobile. He did not notice whether there was any price written on the paper, whether there was any car referred to as the trade-in; whether there was any notation that Foxworth was to bring the car back on Monday or trade by then or whether Foxworth's signature was on the paper. He stated that Foxworth appeared to be upset about his wife's injury but observed that Foxworth himself was not seriously injured.

Was there a "sale" of the automobile to Foxworth or had possession been transferred "pursuant to an agreement of sale" at the time of the accident? In other words, who was the owner at the time of the accident?

 The failure of Dees (the car dealer) to comply with the South Carolina Title Law (§§ 46–150.15 and 46–150.16, S.C. Code, 1962) is not absolutely determinative of the issue because the real question is: Was there an effective transfer "between the parties?" Bankers Ins. Co. of Pa. v. Griffin, S.C., 137 S.E.2d 785, 787; Lynch v. U. S. Branch, Gen. Acc. F & L Assur. Corp., 327 F.2d 328 (4th Cir. 1964); Clouse v. American Mutual Liab. Ins. Co., 232 F.Supp. 1010, 1016 (E.D.S.C.1964); Hanna v. State Farm Mutual Auto. Ins. Co., 233 F.Supp. 510, 515 (E.D.S.C.1964). The failure to comply with any of the statutory provisions can be properly considered some evidence of the parties' intentions, though it certainly is not conclusive.

It is obvious from the testimony that Foxworth liked the Lincoln automobile, but it is uncontradicted that a price had not been agreed upon; nor had Foxworth's likes or dislikes about the automobile been communicated to Dees. Further, the testimony establishes that the agreement between the parties was that

they would *either* trade or the car would be returned on the following Monday.

■ There was no meeting of the minds definitely as to a "sale", or as to a "price". Accordingly, there was no contract; neither party was bound. L. D. Jennings, Inc. v. Brice, 192 S.C. 515, 7 S.E.2d 458. The transaction lacked not only mutuality of obligation but valid consideration; there was no binding contract of sale. See International Shoe Co. v. Herndon, 135 S.C. 138, 133 S.E. 202, 203.

As the late Professor Williston has pointed out:

"Although a promise may be sufficiently definite when it contains an option given to the promisor or promisee, yet if an essential element is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement. Since either party by the very terms of the promise may refuse to agree to anything to which the other party will agree, it is impossible for the law to fit any obligation to such a promise." Williston on Contracts § 45.

See also Rest., Contracts § 32. In this instance, there was no agreement between the parties as to whether or not Foxworth was to trade, nor was there agreement as to price.

In view of all the facts and circumstances, the Court finds there was no "sale" or transfer "pursuant to an agreement of sale" at all or within the meaning of the policy issued by plaintiff, the S. C. Insurance Company.

The fact that the automobile driven by Foxworth was a "non-owned automobile" is not sufficient to avoid liability under the exclusion hereinbefore quoted, because it was admitted that the automobile driven by Foxworth, although "non-owned", was a private passenger automobile operated or occupied by Foxworth as the named insured, which is an exception to the exclusion in the policy. Therefore, Clause 22 and the Exclusion Clause relating to Part I of the policy (liability provision) are reconcilable. Determination beyond this is beyond the purview of this opinion.

■ Defendant South Carolina Insurance Company under its policy No. 2388 has primary coverage of the 1960 Lincoln automobile owned by defendant Samuel T. Dees and involved in the wreck near Myrtle Beach, South Carolina, on July 20, 1963, while operated by James M. Foxworth.

Defendant South Carolina Insurance Company is required under its policy No. 2388 to appear and defend all legal actions brought against the defendant James M. Foxworth arising out of a collision in which he was involved near Myrtle Beach, South Carolina, on July 20, 1963.

Plaintiff Travelers pleads secondary liability in the form of "excess coverage" and exhibits its policy No. LP6539899 which under Clause 22 referred to hereinabove so contracts as to Foxworth. The Court agrees. The limit of such liability is not an issue in this controversy.

And it is so ordered.