198 So.2d 532 (1967)
Jordan Slay MURRY, Sr., Plaintiff-Appellee,
v.
BANKERS FIRE & MARINE INSURANCE COMPANY, Defendant-Appellant, and
Aetna Insurance Company, Defendant-Appellee.
No. 1997.
Court of Appeal of Louisiana, Third Circuit.
April 26, 1967.
Rehearings Denied May 25, 1967.
*533 Voorhies, Labbe, Fontenot, Leonard & McGlasson, by H. Lee Leonard, Lafayette, for defendant-appellant.
Nathan A. Cormie, & Assoc., by Robert Morgan, Lake Charles, for plaintiff-appellee.
Lewis & Lewis, by John M. Shaw, Opelousas, for defendant-appellee, Aetna Ins. Co.
Before TATE, SAVOY and HOOD, JJ.
TATE, Judge.
This suit results from a collision at a city intersection. Both drivers contended that the traffic signal was green for them. The trial court found in favor of Murry, the plaintiff driver. A defendant insurer (Bankers) appeals from judgment awarding Murry substantial damages for his personal injuries.
There is no substantial issue on appeal as to fault. The trial court found that Mrs. Jordan, the defendant driver, ran the red light and that her negligence was the sole proximate cause of the accident. Its evaluation of the evidence is clearly not erroneous.
By its appeal, Bankers chiefly contends that its liability policy did not cover the vehicle operated by Mrs. Jordan, the defendant driver. Alternatively, it contends that another defendant insurer (Aetna) was either the primary insurer or a co-insurer of Mrs. Jordan's automobile at the time of the accident, so that Bankers's liability should be limited accordingly. Finally, Bankers argues that the personal injury award is excessive.
1. Coverage under Bankers's "Comprehensive Liability Policy".

At the time of the accident Mrs. Jordan, the negligent driver, was operating a Chevrolet sedan owned by the named insured (Dominique). Dominique had secured from Bankers a "Comprehensive Liability *534 Policy (General-Automobile)", which was in effect at the time of the 1964 accident.
Bankers contends that the comprehensive policy did not cover operation of Mrs. Jordan's 1961 Chevrolet because this automobile was not incuded in the list of 35 motor vehicles attached as a schedule to the policy.
The pertinent insuring clause of the policy ("Coverage ABodily Injury Liability Automobile") provides that the insurer agreed "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile."
Under the policy terms, the Chevrolet driven by Mrs. Jordan was an "owned automobile". The policy provides liability coverage for any person "while using an owned automobile" with the permission of the named insured. The evidence is uncontradicted that Mrs. Jordan was using the automobile with the permission of Dominique and was therefore an omnibus insured at the time of the accident (if indeed, as the trial court held, the Bankers policy otherwise covered the operation of the Chevrolet in question). Nowhere in the insuring agreements or exclusions of the policy is there any applicable provision limiting the policy's coverage of the operation of owned automobiles with the permission of the insured.[1]
Nevertheless, Bankers contends that its comprehensive liability policy did not cover operation of the Chevrolet operated by Mrs. Jordan because Dominique had not included it in a list of 35 other vehicles attached by Schedule A-1 as a "declaration" under Item 4 of the policy. Bankers relies upon the statement in Item 5 of the declarations that such schedules "disclose all hazards insured hereunder known to exist at the effective date of this policy" and "contain a complete list of all automobiles and trailers owned by the named insured at the effective date of this policy * * *."
The Louisiana Supreme Court has rejected identical contentions of an insurer. Indiana Lumbermens Mutual Ins. Co. v. Russell, 243 La. 189, 142 So.2d 391. There, the insuring agreement covered use of any owned automobile, whereas the declarations (by language similar to that relied upon by the present insurer) indicated that the insured owned only a Pontiac automobile. Nevertheless, the Supreme Court upheld coverage as to another owned car, a Ford, which was not listed in the declarations.
In rejecting the insurer's contentions, our Supreme Court held that the coverage clauses of the contract should not be amended so as to conform with the representations or declarations of the insured, even if the latter reflected the true intent of the parties, because "* * * the insuring clause, being free from any ambiguity, is the law between the parties and must be enforced as written. The fact that the declaration of the insured is in conflict with the coverage clause does not, of itself, lessen the coverage given under the policy or justify modification by the Court." 142 So.2d 394.
In accord with the holding of the Russell case, the present trial court also correctly excluded as inadmissible parole evidence to the effect that, by omitting the Chevrolet from the automobiles listed in the declarations, Dominique actually intended to exclude it from the coverage of the policy. Pel-State Oil Co. v. Weimer, La.App. 2 Cir., 155 So.2d 218, certiorari denied.
We should note again that this particular vehicle was not excluded by endorsement from the coverage of the insuring clauses *535 of the policy and that nowhere in the insuring agreements, exceptions, or exclusions of the policy is there any provision limiting coverage to the hazards, vehicles, or employees to be listed in the declarations.[2]
In contending to the contrary of the Russell holding, Bankers relies on inapposite decisions. They are either contrary to the holding of the Louisiana Supreme Court in Russell [3] or else they involve policies which (different from the present) had insuring clauses specifically limited to the coverage of scheduled or described motor vehicles.[4]
We therefore affirm the trial court's holding that the Bankers liability policy afforded coverage of the operation of Dominique's Chevrolet at the time of the accident.
2. Coverage of the Aetna "Garage Liability Policy".
Bankers appealed from the trial court judgment, which had both (a) awarded the plaintiff damages and also (b) dismissed the plaintiff's claim seeking to hold another insurer (Aetna) solidarily liable with Bankers. Bankers now alternatively contends that Aetna is a co-insurer with it of the loss and that the trial court erred in dismissing Aetna from the suit.[5]
At the time of the accident the negligent driver, Mrs. Jordan, was operating Dominique's car under the following circumstances, according to the uncontradicted showing:
Dominique had left his car with Attaway Darbonne for him to sell it. Darbonne operated a used car sales lot and service station business, in connection with which Aetna had issued him a "Garage Liability Policy". Dominique entrusted the car to Darbonne with full permission for him to let any potential customer use the car. The frequent custom of the used car sales business is to let potential customers try out a vehicle before its final purchase is concluded. A day or two before the accident Darbonne had let Mrs. Jordan have the car on trial, with the understanding that she would purchase it if she was satisfied with its performance during the trial period. The collision occurred while Mrs. Jordan was driving the vehicle during the agreed trial period.
Aetna's garage liability policy included coverage of "The use in connection with garage operations[6] of any automobile which is neither owned nor hired by the named insured * * *" (Clause 2 of automobile hazards), as well as "The ownership, maintenance or use of any automobile for the purpose of garage operations * * *' (Clause 1a). The persons insured by the policy included any person who with the *536 consent of the named insured was using any such vehicle covered by the policy.[7]
Under these unambiguous provisions, Mrs. Jordan was an omnibus insured protected by Darbonne's policy while using with Darbonne's permission the car left on his lot for resale purposes. "When a dealer permits a prospective purchaser to try out one of the dealer's automobiles, the automobile beyond question is being used in the dealer's business within the meaning of a dealer's and garage keeper's liability policy", Hardware Mutual Cas. Co. v. Jones, C.A.4, 330 F.2d 1014, 1016 (1964). See also: Kershaw v. Deshotel, La.App. 3 Cir., 179 So.2d 528; Safeco Insurance Co. of Amer. v. Pacific Indemnity Co., 66 Wash.2d 38, 401 P.2d 205 (1965); Travelers Indemnity Co. v. Dees, 235 F.Supp. 515 (D.C.1964); 7 Am.Jur.2d Automobile Insurance, Section 95.
We therefore find to be without merit Aetna's suggestion that the vehicle was not covered because it had been furnished to Mrs. Jordan only temporarily and not for her regular use. This argument is based on the holding in Lincombe v. State Farm Mutual Auto. Ins. Co., La.App. 3 Cir., 166 So.2d 920, 924, which however concerned an entirely different type of policy and clause.[8] To the contrary, the present policy expressly insures those who with the named insured's permission are driving non-owned vehicles used in connection with automobile sales operations of the named insured.
Nevertheless, the district court dismissed the plaintiff's suit against Aetna, holding that Aetna's policy provided only excess coverage. The trial court reached this conclusion by virtue of the "other insurance" clauses of the policies issued by Aetna and Bankers respectively.
We feel that in this respect our trial brother fell into error.
The other insurance clauses of each policy provides that, when the claimant had other insurance covering the same loss, there will be "pro rata" liability between the insurers proportionate to the respective policy limits. Aetna's clause contains no provision stipulating for only excess coverage as to non-owned cars (i. e., cars not owned by Darbonne, its named insured).[9]
The other insurance clause of the Bankers policy similarly provided for pro rata liability. Unlike Aetna's clause, however, it stipulated that it would provide only excess insurance as to non-owned automobiles.[10] *537 (This excess coverage provision is not relevant in the present instance, however, since the covered vehicle was owned by Dominique, the named insured, and was thus not a "non-owned" vehicle.)
Under these circumstances, where each insured provides primary coverage and where neither coverage is excess insofar as the other, the "pro rata" other insurance clauses are not in conflict; they are therefore both enforced according to their terms, so as (between the insurers) to hold each liable for its proportionate amount of the loss. State Farm Mutual Auto. Ins. Co. v. Travelers Ins. Co., La.App. 3 Cir., 184 So.2d 750, certiorari denied; Bardwell v. England Transportation Co., La.App. 4 Cir., 169 So. 2d 537; 7 Am Jur 2d, Automobile Insurance, Section 200.
In contending that its policy provides only excess insurance, Aetna relies upon the provision in the Bankers policy that Bankers provided excess insurance only as to non-owned vehicles. By virtue of this provision, if the insured vehicle had been "non-owned" as to Bankers (it was not, however), then Bankers could validly have argued that its coverage was excess only. See Peterson v. Armstrong, La.App. 3 Cir., 176 So.2d 453, 458 at footnote 2.
Based on this circumstance, Aetna argues that its policy also should be construed to provide only excess coverage as to insured vehicles non-owned as to it. The short answer to this contention is that Aetna's policy does not contain any provision to such effect. Therefore, its other insurance clause will be enforced in accordance with its terms, by reason of which Aetna is a primary co-insurer with Bankers proportionate to the respective policy limits of the two companies.
Here, the pertinent policy limits are as follows: Bankers insured bodily injury liability up to limits of $100,000 per person, while Aetna's coverage was limited to bodily injury coverage for up to $5,000 per person.[11] Thus, the total coverage afforded as to the accident was $105,000. According to the pro rata clause of the policies, therefore, then, as between the insurers, Bankers is liable for 20/21 (i. e., $100,000/$105,000) and Aetna is liable for 1/21 (i. e., $5,000/$105,000) of the loss.
The decree will be amended accordingly.
3. Aetna's Motion to Dismiss the Appeal as to It.
By motion to dismiss the appeal as to it, however, Aetna contends that it is not party to this appeal and that the judgment cannot be revised in the plaintiff's favor so as to hold it liable.
The trial court dismissed the plaintiff Murry's claim against Aetna, at the same time holding Bankers liable. Bankers alone appealed. Bankers had not by thirdparty demand sought contribution from Aetna in the event of unfavorable judgment.
By his answer to the appeal, the plaintiff Murry as appellee sought amendment of the judgment so as to hold Aetna liable to him as co-insurer with Bankers. Nevertheless, as Aetna correctly points out, one appellee (Murry) cannot by answer to *538 the appeal obtain an amendment of the trial judgment in his favor as against another appellee; an independent appeal is required for such relief. LSA-CCP Arts. 2133, 2087 (as amended in 1962); Lomenick v. Hartford Accident and Indemnity Co., La.App. 3 Cir., 189 So.2d 731; Howard v. Insurance Company of North America, La.App. 3 Cir., 159 So.2d 560, certiorari denied.
However, the unrestricted appeal of Bankers, the defendant cast, entitles Bankers to have the judgment amended so as to hold Aetna solidarily liable with it (within the respective policy limits). When only one of two defendants is cast, his appeal brings before the reviewing court the question of the appellee defendant's solidary liability with him to the plaintiff. Emmons v. Agricultural Insurance Co., 245 La. 411, 158 So.2d 594, Fontenot v. Grain Dealers Mutual Ins. Co., La.App. 3 Cir., 168 So.2d 478, Vidrine v. Simoneaux, La.App. 3 Cir., 145 So.2d 400. Therefore, by this appeal an appellant defendant is entitled to have the judgment amended in his favor so as to hold an appellee defendant solidarily liable with him.[12] Vidrine v. Simoneaux.
In Vidrine v. Simoneaux, La.App. 3 Cir., 145 So.2d 400, we held that one appellant defendant's appeal (Simoneaux) brought up before the appellate court the question of the solidary liability with him of another defendant (Stelly), an appellee who had been dismissed from the suiteven though Simoneaux had not filed a third party demand against Stelly, nor had the plaintiffs Vidrines appealed rejection of their claim against Stelly. We reasoned this result is necessary to effectuate the purposes of the 1960 amendment of Civil Code Article 2103, which was intended to prevent a plaintiff by inaction from depriving one solidary obligor of contribution from another, and that no useful purpose will be served by requiring the appellant obligor to institute separate proceedings subsequently to enforce contribution. 145 So.2d 405-406. The Supreme Court specifically approved our holding in this decision. Emmons v. Agricultural Insurance Co. at 158 So.2d 599.
We think this holding is determinative of the present issue and entitles Bankers to amendment of the judgment holding Aetna liable as co-insurer.
We perhaps should note that we have recently held that (within respective policy limits) co-insurers are solidarily liable with each other and with the insured for a tort loss within the coverage of the respective policies, with the function of the pro rata other insurance clauses simply being to adjust the payment of the loss as between the insurers. Wilks v. Allstate Insurance Co., La.App. 3 Cir., 195 So.2d 390. This solidary liability arises because by separate instruments the several insurers separately each bound themselves to perform the whole of the same obligation (i. e., to pay the insured's tort loss), at least within their respective policy limits and where the loss is not established as greater than the combined policy limits. LSA-Civil Code Arts. 2082, 2092; Hidalgo v. Dupuy, La.App. 1 Cir., 122 So.2d 639, certiorari denied; Wilks v. Allstate Insurance Co., cited above, and authorities cited by it.[13]
*539 It should perhaps be added that a recent decision of another circuit conflicts somewhat with our rationale in Wilks. See Fremin v. Collins, La.App. 4 Cir., 194 So.2d 470. There, where the tort liability insured (that of Collins, an uninsured motorist) was claimed to be $54,000, the court held that the coverage of each of two $5,000-limit policies was several ($5,000 each) and not solidary (both insurers solidarily liable for a total of only $5,000), for purposes of determining whether suit against one of the insurers interrupted prescription as against the other insurer. When liability is established as in excess of the combined limits, the solidary liability of each insurer with the tortfeasor may indeed be for a separate portion of the total judgment (see footnote 13 above); but, here, the loss is established as within the combined policy limits, so each insurer's obligation is for at least part of the same tort liability, and it is solidary with the other insurer's and with the tortfeasor's liability to that extent at least. See Wilks v. Allstate Insurance Co. The essential holding in Fremin is thus inapplicable to the present facts.[14]
Aetna's motion to dismiss the appeal as to it is therefore overruled.
4. Minor Specification of Error by Bankers.
Bankers contends that the trial court erred in permitting over its objection the plaintiff to introduce at the trial a discovery deposition taken by Bankers of an officer of its named insured (Paul Dominique). Bankers suggests the deposition should not have been admitted in the absence of a showing that the witness was unavailable to testify, LSA-CCP Art. 1428 (3) (c), since the deposition was not admissible under 1428(2)permitting depositions of a party or his representative to be introduced by an adverse party for any purposebecause an insured is not a "representative" of the insured, Soprano v. State Farm Mutual Auto. Ins. Co., 246 La. 524, 165 So.2d 308.
Bankers appears to be correct in this contention. However, eliminating the objected-to deposition does not alter the result of our decision. The essential substance of Dominique's testimonythat he had entrusted the Dominique automobile to Darbonne, the used car dealer, with full permission for Darbonne to let potential customers use it on trialis otherwise included in the record through the uncontradicted testimony of Darbonne at the trial.
5. Quantum.
The trial court awarded $25,000 general damages to the plaintiff Murry for his personal injuries sustained in the accident, as well as $2,754.29 special damages. Bankers and Aetna contend that the award of general damages should be reduced, while by answer to the appeal the plaintiff prays for an increase in this award.
There is no question but that Murry was severely and critically injured in the accident.
Murry was thrown from his truck and under the other vehicle. He was dragged by the latter, and he lay pinned under it with its overheated muffler resting against *540 and seriously burning his groin and genital areas.
The almost uncontradicted medical testimony shows the following:
Aside from these serious burns, he suffered other serious injuries in the accident. His chest was crushed. He sustained comminuted fractures of all ribs on his right side. His lung was injured. He suffered from internal hemorrhages. He lay in profound shock in danger of death for almost three days. He sustained lacerations, contusions, abrasions, a fracture of one of the vertebra, and a cervical sprain. He suffered extreme pain from the burn injuries, as well as painful treatment for relief of the burning effects upon his sex organs.
The chief controversy is whether the serious injuries produced permanent residual. Bankers and Aetna suggest that the medical testimony preponderantly suggests that (with the exception of burn scars and a drooping shoulder) there is no serious residual after about three months after the accident and that, even considering the seriousness of the initial injuries, the award of $25,000 is excessive taking into account what residuals there are.
On the other hand, the district court found more serious residuals at the time of the trial almost two years after the accident:
The keloid scarring around the groin and thighs still caused restriction of motion and was still quite painful, according to substantial medical testimony corroborating the plaintiff's complaints; however, it may be relieved by further surgery if the pain and restriction persist. The plaintiff had as residual a permanent scarring of his genitalia, a permanent deformity by way of a shoulder droop, a permanent restriction of neck motion resulting from the slight residual from his cervical sprain.
The preponderance of the local medical and lay testimony indicates that at the time of trial this 62-year-old man's former economic and social activities were still much curtailed as a result of the accident. (However, he suffered little actual loss of income because his hay baling and cattle raising operations had not been profitable even before the accident.)
Considering the great discretion accorded the trial court in the award of general damages for personal injuries, Ballanga v. Hymel, 247 La. 934, 175 So.2d 274, we find no such manifest inadequacy or excessiveness in the trial court's award of $25,000 as would justify our increase or reduction upon appellate review.
The injuries involved extreme initial pain and substantial although not crippling permanent residual. We believe the present award is not greatly disproportionate with those made for somewhat comparable injuries. See, e. g., Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (middle-aged mother, $19,500 for permanent residual of limitation and pain in back, restricting somewhat performance of household duties); Doerle v. State Through Dept. of Highways, La.App. 3 Cir., 147 So.2d 776 (70-year-old plaintiff, $40,000, including special damages); McCorquodale v. Watson, La.App. 3 Cir., 170 So.2d 545 (58-year-old man, $17,500 for injuries without as persisting or serious a residual as the present); Hidalgo v. Dupuy, La.App. 1 Cir., 122 So.2d 639 (50-year-old man, $20,000 for restriction of activity due to permanent back residual, which did not cause any actual loss of earnings).
The trial court's award of general damages will therefore be affirmed.
Decree.
For the reasons assigned:
We affirm the district court judgment holding the defendants Mrs. Pauline Willis Jordan and Bankers Fire & Marine Insurance Company liable in solido to the plaintiff for the sum of Twenty-Seven Thousand Five Hundred Fifty-Four and 29/100 ($27,554.29) Dollars, together with legal interest and court costs, including expert witness fees as fixed by the trial court.
*541 Additionally, we amend this judgment insofar as it dismissed the suit as against the codefendant Aetna Insurance Company; we further amend the trial court judgment to decree that Aetna shall be solidarily liable to the plaintiff with the two other defendants for principal, interest, and costs (with, however, Aetna's liability as to principal being limited to only five thousand four hundred nine and 39/100 ($5,409.39) dollars, of said principal amount in accordance with its policy limits[15]), but, as between the two insurer defendants Bankers is liable for 20/21 (twenty twenty-oneths) and Aetna for 1/21 (one twenty-oneth) of all amounts for which these insurers are here held solidarily liable.
As thus amended, we affirm the trial court judgment in all other respects. Bankers and Aetna are assessed with the costs of this appeal.
Amended and affirmed.
HOOD, J., dissents and assigns written reasons.
HOOD, Judge (dissenting).
I concur in most of the conclusions reached by the majority, but I feel that my colleagues erred in refusing to grant Aetna's motion to dismiss the appeal as to it.
We held in Vidrine v. Simoneaux, 145 So.2d 400 (La.App. 3d Cir. 1962), that where two persons are sued as solidary obligors, and the plaintiff takes no appeal from a judgment which dismisses the suit as to one defendant and condemns the other, an appeal by the latter brings the discharged defendant before the appellate court, and the litigation may be continued against him as though an appeal from the judgment of dismissal had been taken by plaintiff. The reason for this holding was to prevent a plaintiff, by inaction, from depriving one solidary obligor of his right and opportunity of obtaining contribution from another solidary obligor.
The rule applied in the Vidrine case is applicable only where the two defendants are solidary obligors. If they are not solidarily liable for the debt sued upon, and cannot legally be held to be liable in solido for it, then neither of the defendants has the right to demand contribution from the other, and consequently an appeal by one of such defendants does not bring the other back into court so that the judgment can be modified as between that non-appealing defendant and the plaintiff-appellee.
In the instant suit the majority has concluded that each of the two policies involved here, being the policy issued by Bankers and the one issued by Aetna, provides valid and collectible insurance against such loss, and I agree with that conclusion. I cannot agree with the majority's further holding, however, that the two insurers are solidarily liable to plaintiff for the entire debt, up to the limits of their respective policies. Since I am convinced that the two defendants are not solidary obligors, then I feel that the appeal by Bankers does not bring Aetna back into the case.
These two insurance policies are entirely separate contracts, entered into between different parties. There is no contractual relationship between plaintiff and either of the defendants, and there is no such relationship between the two defendant-insurers. The policy which was issued by Bankers to Domingue provides on its face that the limit of liability of the insurer for bodily injury is $100,000.00 for each person. But, as pointed out in Footnote 10 of the majority opinion, the policy further provides:
"14. Other Insurance: If the insured has other insurance against a loss covered *542 by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss." (Emphasis added.)
The policy which was issued by Aetna to Darbonne provides on its face that the limit of liability of the insurer for bodily injury is $5,000.00 for each person. And, as shown in Footnote 9 of the majority opinion, that policy also provides:
"3. Other Insurance. If the insured * * * has other insurance against a loss covered by this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss." (Emphasis added.)
Since coverage is provided by both policies, the "total applicable limit of liability of all valid and collectible insurance against such loss" is $105,000.00. Under the above quoted provision of the Banker's policy, the insurer "shall not be liable" for more than its proportionate share of the loss, and that is 20/21 of the amount of such loss. Also, under the quoted provision of the Aetna policy, that insurer "shall not be liable" for more than 1/21 of the loss.
LSA-C.C. art. 2093 provides:
"Art. 2093. An obligation in solido is not presumed; it must be expressly stipulated.
"This rule ceases to prevail only in cases where an obligation in solido takes place of right by virtue of some provisions of the law."
Certainly it is not "expressly stipulated" in either of the policies that the two insurers are to be obligated in solido for the entire debt. And there is no provision of law which makes them solidarily liable for it. I feel that the liability of each of these insurers is specifically limited by contract, and that neither of them should be held liable for more than its contract provides.
If plaintiff should have instituted suit against Aetna alone, and the latter had properly pleaded and proved the above mentioned coverage by Bankers, I think plaintiff could recover from Aetna only 1/21 of the total damages he sustained. I do not agree with my brothers in their apparent feeling that under those circumstances judgment could be rendered against Aetna for the entire amount of the debt, up to the limit of its policy, leaving to Aetna only the right to claim contribution from Bankers for a part of the obligation under LSA-C.C. art. 2103. For the same reasons, I feel that plaintiff could have recovered only 20/21 of the debt from Bankers, if he had sued only that defendant and the evidence established the coverage which also is provided by the Aetna policy.
I am aware of the fact that my views as to this issue are contrary to those expressed by a majority of our court in Wilks v. Allstate Insurance Company, 195 So.2d 390 (La.App. 3d Cir. 1967). I was not on the panel which decided that case, however, and I respectfully disagree with my esteemed colleagues in the conclusions which they reached in that case as to this issue. My views on this question are in accord with those expressed by the Court of Appeal, Fourth Circuit, in Fremin v. Collins, 194 So.2d 470 (La.App. 4th Cir. 1967).
In my opinion the motion filed by Aetna Insurance Company to dismiss the appeal as to it should be granted, and the judgment appealed from should be amended by reducing the amount which the defendant Bankers Fire and Marine Insurance Company is condemned to pay from $27,554.29 to a sum equal to 20/21 of that amount. In all other respects I feel that the judgment should be affirmed.
*543 For these reasons, I respectfully dissent from the majority opinion insofar as it conflicts with the views which are expressed here.

On Applications for Rehearing.
En Banc. Rehearings denied.
HOOD, J., is of the opinion that a rehearing should be granted.
NOTES
[1] The three nonapplicable exceptions in this regard include (a) the use of an automobile with a trailer when either of them are not covered by like insurance with the company, (b) a person operating sales agency and using the owned car, and (c) an employee injured through the negligence of another employee.
[2] We should further add that the apparent purpose of these declaration schedules was in connection with premium computations, which were to be made monthly according to monthly revisions of such schedules, with the insurer having the right to examine and audit the insured's books and records until three years after the final termination of the policy. See interpretations of similar policy premium provisions in Western Casualty & Sur. Co. v. Harris Petroleum Co., 220 F.Supp. 952 (S.D. Calif., 1963) and Rasmussen v. Western Casualty and Surety Co., 15 Utah 2d 333, 393 P.2d 376 (1964), rejecting arguments of insurers similar to the present.
[3] American Insurance Company of Newark, New Jersey v. North Side Metal, Inc., 162 F.Supp. 72 (S.D. Ill, 1958).
[4] Cornelius v. Fields, La.App. 1 Cir., 122 So.2d 704; Brown v. State Farm Mutual Auto. Ins. Co., Ky., 306 S.W.2d 836 (1957); Utilities Ins. Co. v. Wilson, 207 Okl. 574, 251 P.2d 175 (1952); Shipman v. Federal Mutual Insurance Company, 232 F.Supp. 354 (E.D.Mo., 1964); Canal Insurance Company v. Brooks, 201 F. Supp. 124 (W.D.La., 1962).
[5] Aetna's motion to dismiss the appeal as to it will be discussed below in section 3 of this opinion.
[6] In the policy definitions, it is stated that "`garage' means an automobile sales agency, repair shop, service station, storage garage or public parking place * * *."
[7] The pertinent policy provision in full is:

"Persons insured. Each of the following is an insured under Part 1 [the liability coverage] * * *"
"(3) With respect to the Automobile Hazard:
"(a) any person while using, with the permission of the named insured, an automobile to which the insurance applied under paragraph 1(a) or 2 of the Automobile Hazards, provided such person's actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission."
[8] The question there was whether a named insured was insured by her personal liability policy (State Farm) while driving a non-owned car loaned to her by an automobile sales agency. Her policy did not cover non-owned vehicles if furnished for her "regular use". We held that the temporary loan to her of this replacement vehicle did not fall within this exclusion.
[9] Aetna's other insurance clause is designated as Clause 3 of the "Conditions" of its policy. The clause in full reads:

"3. Other Insurance. If the insured, or with respect to Part II the claimant, has other insurance against a loss covered by this policy, the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.
"The above provision shall not apply with respect to other insurance stated to be applicable to the loss only as excess insurance over any other valid and collectible insurance or on a contingent basis."
[10] Bankers other insurance clause is designated as Clause 14 of the "Conditions" of its policy. The clause in full reads:

"14. Other Insurance: If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."
[11] Additionally, each policy covered property damage liability up to the same limits per each accident.
[12] It is to be noted that the appellant defendant's appeal justifies amendment of the judgment so as to hold the appellee defendant solidarily liable to the plaintiff, only where this is in aid of the appellant defendant's right to contribution from another solidary obligor. If, for instance, the appellant defendant obtains a reversal of the judgment and dismissal of the plaintiff's claim against it, then the plaintiff (in the absence of an independent appeal) is not entitled to amendment of the judgment so as to hold the appellee defendant liable to him (plaintiff), since the subrogatory right to enforce contribution becomes moot. Gorum v. Pritchard, La.App. 3 Cir., 173 So.2d 308.
[13] The pro rata "other insurance" clause comes into play only when the recovery against the insured is less than the combined total coverage of both policies. Otherwise, both policies must contribute the full amount of their policy limits to the payment of the insured's liability. 16 Couch on Insurance 2d, Section 62:56, see also Section 62:15. Annotation, Insurance Apportionment of loss, 169 A.L.R. 387, 400; Pennsylvania Insurance Co. v. Allstate Insurance Co., 226 F.Supp. 99 (D.C. Va.1964).
[14] We thus distinguish the holding in Fremin from application here. We do not reach consideration of the correctness of its rationale that, on the basis of the plaintiff's allegations, the liability of the two insurers can be regarded as several so as to require the dismissal of one insurer from the suit, when in the ultimate event the liability established after trial might be within the combined policy limits so as to entitle one insurer to contribution from another. It could be argued that such a ruling might impede one insurer's right to contribution from another, contrary to the underlying policy enforced by Vidrine v. Simoneaux, and approved by the Supreme Court. (See text of this opinion four paragraphs above.) We express no opinion as to this issue because it is not before us.
[15] Under its bodily injury coverage, Aetna's policy limit for injuries to one person is $5,000. Under its property damage coverage, it is liable for the entire $409.39 awarded for property damage in this suit (said sum being within its policy limits for property damage liability).